ALAMEDA TOWER ASSOCIATES, ETC., demandantes y recurrentes, *v.* HON. WILFREDO MUÑOZ ROMÁN, demandado y recurrido.

*Número:* RG-90-409 *Resuelto:* 15 de enero de 1992

---

700

*Enrique Umpierre Suárez,* abogado de los recurrentes; *Wilfredo Muñoz Román,* Registrador de la Propiedad, *pro se.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Una vez más adjudicamos una controversia relacionada con los llamados *documentos complementarios* en nuestro sistema registral inmobiliario. *Figueroa Pesante v. Registrador,* 126 D.P.R. 209 (1990).

I

Mediante la Escritura Núm. 37 de 21 de mayo de 1987, autorizada por el notario Alfredo Castro Mesa, la Corporación de Renovación Urbana y Vivienda (C.R.U.V.) segregó una parcela de terreno y la vendió a Alameda Towers Associates, S.E. (en adelante Alameda). El remanente fue comprado por Metropolitan Tower Associates, S.E. (en adelante Metropolitan).[1]

La escritura fue presentada para su inscripción en el Registro de la Propiedad, y como documentos complementarios se acompañaron una resolución de la Administración de Reglamentos y Permisos (en adelante A.R.PE.) y un plano de mensura. Después de tres (3) notificaciones de defectos y luego de haberse presentado los correspondientes escritos de recalificación, el Registrador de la Propiedad (en adelante Registrador), Sección Tercera, San Juan (Hon. Wilfredo Muñoz Román), notificó su denegación de inscripción. Fundamentó su proceder así:

Denegada la inscripción de este documento por *observarse* que de la información incluida en el *plano de mensura* sometido

---

[1] Se consignaron las cabidas siguientes: finca matriz, 42,029.7479 metros cuadrados (10.69 cuerdas); parcela segregada, 19,011.9590 metros cuadrados (4.8372 cuerdas), y remanente, 23,017.7889 metros cuadrados (5.8564 cuerdas).

no se desprende una *identificación* clara de la *finca* objeto de segregación, el *titular* de la misma y la *cabida correspondiente.*

De la Resolución de ARPE que se acompaña no se desprende claramente la aprobación de esta agencia y *no se identifica la finca objeto de segregación.*

De la finca objeto de la segregación que se propone realizar identificada en la escritura de segregación, se han segregado varias fincas por lo que de la Resolución y Plano de *mensura. deberá identificarse claramente el remanente.*

Al *sumar* todas las cabidas de las diferentes áreas representadas en el plano sometido arrojan una cabida total *mayor* que la que consta de la finca inscrita y en el Registro. Tomándose en su lugar anotación preventiva por 60 días según lo dispone los Artículos 68 y 85 de la Ley 198 y el Artículo 97.1 del Reglamento Hipotecario.

Den[e]gado además en cuanto a la finca de 23,017.7889 m/c al Folio 254 Vto. del Tomo 827 de Monacillos, finca número 22,820 Anotación "A" por no aparecer la misma inscrita a favor de la vendedora, tomándose en su lugar anotación preventiva por 60 días según lo dispone el Artículo 57 de la Ley 198. Afecta ambas fincas por su procedencia a servidumbres a favor de la Autoridad de las Fuentes Fluviales de Puerto Rico, Autoridad de Acueductos y Alcantarillados y del gobierno de la Capital; servidumbres de Alcantarillado Pluvial de la Central San José, Inc., y del Municipio de San Juan; condiciones restrictivas sobre edificación y uso. (Énfasis suplido.) *Exhibit* F, págs. 25–26.

Inconformes con esta determinación, Alameda y Metropolitan instaron este recurso gubernativo.

## II

La nota denegatoria del Registrador se apoya en el presupuesto de que los interesados no cumplieron con el requisito de la identificación de las fincas objeto de los negocios, elemento fundamental del principio de especialidad de nuestro sistema registral inmobiliario. De acuerdo con este funcionario, los documentos complementarios del título inscribible adolecen de deficiencias que impiden una identificación certera de la finca segregada y del remanente.

Los recurrentes Alameda y Metropolitan, por su parte,

sostienen que se trata de una situación rutinaria pertene-
ciente más bien al típico negocio de segregación y venta en
el que con el documento inscribible se acompañan la reso-
lución de A.R.Pᴇ. y un plano que ilustra gráficamente la
finca segregada y su remanente. Arguyen, además, que no
existe una ley específica ni un principio registral que apoye
las exigencias del Registrador.

## III

De entrada, unas observaciones preliminares. No se
cuestiona la facultad del Registrador para exigir documen-
tos complementarios. Tampoco existe debate alguno de que
los documentos aludidos gozan de esa naturaleza. La con-
troversia se limita a determinar si éstos contienen la infor-
mación que les insufle del vital *elemento de complementa-
ridad,* ya que si bien desde el punto de vista formal o
nominal pueden satisfacer esta exigencia, la complementa-
ridad hay que buscarla en la sustancialidad de su
contenido.

A fin de cuentas, no podemos olvidar que la fina-
lidad de estos documentos es complementar aquellos as-
pectos necesarios para hacer viable e inscribible el docu-
mento principal. *Figueroa Pesante v. Registrador,* supra.
En este sentido, en instancias como la de autos —en que se
pretende inscribir una finca segregada— es necesario
siempre acompañar con el documento principal (escritura
de segregación) los siguientes documentos complementa-
rios: la resolución de A.R.Pᴇ. y el plano de lotificación o
mensura aprobado. Examinemos separadamente sus con-
tenidos y si cumplen con los fines legales perseguidos.

## IV

La resolución de A.R.Pᴇ. de 14 de mayo de 1987 —de
una sola página— identifica el número del proyecto, el

asunto ("segregación de Terrenos en el Proyecto Residencial Alameda Towers en Río Piedras") y el nombre del proponente ("Corporación de Renovación Urbana y Vivienda"). Contenía la información siguiente:

> Los *terrenos envueltos* en esta propuesta se *describen* de la siguiente forma:
> PARCELA *B*
> RÚSTICA: Parcela radicada en el barrio Monacillo Urbano del término municipal de Río Piedras con una cabida superficial de 19, 011.9590 metros cuadrados, equivalentes a 4.8372 cuerdas y en lindes: por el Norte, con la Carretera Estatal Número 21; por el Sur, con las Parcelas C y D del Proyecto Alameda Towers; por el Este[,] con la Parcela C, la Calle F. Gómez Acosta y la Urbanización Las Lomas y por el Oeste[,] con terrenos de Asunción Geigel.
> *Los mismos se ilustran gráficamente en el plano de mensura* preparado por el agrimensor Antonio Meléndez, Licencia Número 6328.
> Esta Administración ha realizado una evaluación de la propuesta sometida y encuentra que la misma es aceptable.
> Considerando lo anteriormente expuesto y a tenor con la Ley 76 del 24 de junio de 1975, la Resolución JPD–11 de la Junta de Planificación del 10 de mayo de 1982, delegando funciones en la Administración de Reglamentos y Permisos y la Orden Administrativa ARP-Núm. 86–2 del 26 de noviembre de 1986 de la Administración de Reglamentos y Permisos delegando funciones adicionales en el Administrador Auxiliar del Area de Revisión Técnica por la presente se adopta el siguiente acuerdo sobre esta propuesta: AUTORIZAR.
> Se dispensa a la parte proponente de cumplir con el Reglamento de Planificación Número 3 (Lotificaciones) en cuanto a la presentación de un plano de inscripción. Los *planos de mensura correspondientes deberán ser presentados directamente al Registrador de la Propiedad con copia de esta resolución para la inscripción de las lotificaciones resultantes.* (Énfasis suplido.) *Exhibit* B, pág. 20.

El Registrador alega que esta resolución no identifica claramente la finca objeto de segregación, como tampoco expresa los datos de inscripción ni su cabida superficial. Por estas razones, aduce que no tiene los medios adecuados para estimar que la parcela que se pretende segregar

corresponde a la identificada en la escritura pública. Examinemos su contención.

Los documentos presentados no son modelos de claridad y exactitud. Hacemos esta observación, pues hemos de evitar caer en una laxitud judicial desmedida que dificulte la labor calificadora y la convierta en un acto en el que el Registrador, por razón de información diseminada en varios documentos, se vea precisado a completar un rompecabezas o a componer un mosaico. Por fortuna, en este caso, el plano de mensura identifica cuatro (4) parcelas de terreno ("A", "B", "C" y "D"). Los anejos correspondientes a cada una describen su localización exacta y el área en cuerdas y metros cuadrados. La parcela "A" se identifica como de uso público y se hace constar que allí está ubicado el Condominio Alameda. La parcela "C" se identifica como una escuela y la parcela "D" como el remanente.

A base de un estudio integral, razonablemente, podemos concluir que el plano de mensura y la resolución de A.R.Pᴇ. se complementan mutuamente, de manera tal, que puede identificarse la parcela "B" como la finca objeto de segregación; que dicha segregación fue aprobada por A.R.Pᴇ.; y que la parcela "D" *constituye el remanente.*

Bajo esta perspectiva, no podemos convenir con el Registrador en lo referente a los primeros tres defectos señalados. Estos documentos, además de complementar el principal (la escritura de segregación), son también complementarios *entre sí.* Como señalan los recurrentes, el "plano no llega al Registro por tener vida propia, sino como *uno de los pasos a seguir para que A.R.P.E. autorice la segregación solicitada.* De hecho, *de la faz del plano* surge estampado un sello de aprobación de A.R.P.E. del que surge el número del caso, y la fecha de aprobación. En *conjunto* con la Resolución dictada por la Agencia, se identifica claramente el titular interesado, la Corporación de Renovación Urbana y Vivienda". (Énfasis suplido.) Petición, pág. 12.

Concentrémonos en el restante señalamiento.

## V

■ Con ciertos límites, la calificación registral, piedra angular del principio de legalidad, exige del Registrador un juicio de crítica jurídica sobre la validez y eficacia de los negocios jurídicos contentivos en los documentos presentados. Así logramos que sólo tengan acceso al Registro los títulos que cumplen las exigencias legales.

■ El ámbito de la calificación está delimitado por el Art. 64 de la Ley Hipotecaria y del Registro de la Propiedad (en adelante Ley Hipotecaria), 30 L.P.R.A. sec. 2267. En cuanto a los documentos notariales, abarca la legalidad de las formas extrínsecas de los documentos, la capacidad de los otorgantes y la validez de los actos dispositivos. Aunque el citado Art. 64 no lo dispone expresamente, la doctrina está conteste en que se sobreentiende que la calificación debe extenderse a la *identidad personal* y *real*.

■ Como veremos, la identificación certera de la finca ha sido una de las cuestiones que más ha preocupado al derecho registral inmobiliario. Señala el distinguido Registrador y tratadista español José María Chico y Ortiz que el asunto de la identificación de la finca puede ser un serio obstáculo que se oponga a una pretendida inscripción; por ende, la calificación registral es amplia y sin limitaciones. J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, 2da ed., Madrid, Marcial Pons, 1989, T. I, pág. 672. Como corolario, para inscribir las fincas éstas tienen que ser descritas con unas circunstancias *mínimas* de identificación: naturaleza, situación, linderos, medidas superficiales en el sistema métrico decimal, etc. Art. 87 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2308. Lo que se busca es que no haya un divorcio entre la finca en sentido material y la finca en sentido registral, esto es, que la realidad física

de los terrenos corresponda a la jurídica. La ausencia de un catastro o la falta de coordinación entre el catastro y el registro, requieren de todo Registrador el máximo esfuerzo por cerciorarse de que la conformación y transformación de la realidad material de una finca se recoja fielmente en el Registro. De otra manera se perdería la eficacia práctica del sistema registral. M. Amorós Guardiola, *Los registros jurídicos de bienes en Derecho español*, en *Principios y desarrollo legislativo de los registros jurídicos de bienes*, II Congreso Internacional de Derecho Registral, Madrid, Ilustre Colegio Nacional de Registradores de la Propiedad y Mercantiles de España, Centro de Estudios Hipotecarios, 1974, pág. 757 y ss.

En resumen, en esta dimensión se pretende evitar las anomalías siguientes: (a) la publicidad registral de fincas materialmente inexistentes y (b) la inmatriculación, parcial o total, de una misma finca a nombre de dos (2) o más titulares diferentes. *Cruz Fontánez v. Registrador*, 126 D.P.R. 182 (1990). En especial, la doble inmatriculación acarrea la pérdida de la protección de la Ley Hipotecaria. *Pérez Cruz v. Fernández*, 101 D.P.R. 365, 371–372 esc. 6 (1973).

A la luz de estos principios doctrinales examinemos la situación cuando de los documentos presentados surge que la suma de las cabidas de las cuatro (4) parcelas *excede* la cabida registral de la finca original. Los recurrentes Alameda y Metropolitan aceptan este hecho; pero le restan importancia al señalar que las únicas parcelas *relevantes en este caso* son las que se mencionan expresamente en la escritura, esto es, la "B" (finca objeto de segregación) y la "D" (remanente). Argumentan que la inclusión de las otras parcelas no debe afectar la adecuación del plano para evidenciar el cumplimiento de las disposiciones de A.R.Pe.

## VI

▮▮▮▮▮▮▮▮ Un plano de mensura es la representación gráfica de la extensión superficial o cabida de un terreno o heredad. El Art. 240 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2765, especifica que cuando se requiera la acreditación de la mensura de una finca, se hará mediante la certificación de mensura debidamente jurada por el agrimensor autorizado que la practicó.[2] Esto se debe a que cuando hablamos de agrimensor, estamos ante un profesional que hace "hincapié en los conceptos de precisión y exactitud que el topógrafo ha de tener siempre bien presentes si desea que todas sus mediciones cumplan adecuadamente su propósito, sin pérdidas indebidas de tiempo y dinero en la ejecución de las mismas". D. Fooke-Kelly, *Tratado de Topografía*, 3ra ed., Aguilar, 1971, pág. XI; T. Busch, *Fundamental of Dimensional Metrology*, 2da ed., Delmar Publ. Inc., 1989, pág. 1.

Coincidimos con los recurrentes Alameda y Metropolitan en que el plano requerido no tenía necesariamente que ilustrar gráficamente las parcelas "A" y "C". Pero una vez incluidas e informadas sus respectivas cabidas, no pueden invocar todos los beneficios que surgen "de la faz del plano" y, simultáneamente, pretender que el Registrador —como tampoco este Foro— ignore la extraña situación surgida, también de su faz, en cuanto a la cabida superficial, y se abstenga de notificarlo como un defecto que impide la inscripción solicitada. Resolvemos, pues, que como en el Registro y en la faz de los documentos complementarios constaba la anomalía de que la cabida de la finca original era *menor* que la suma de las cabidas de las fincas segregadas y el remanente, el Registrador actuó acertadamente al negarse a inscribir por este fundamento.

---

[2] Una de las maneras de lograr concordancia entre el Registro y la realidad extrarregistral es el procedimiento de rectificación de cabida dispuesto en el Art. 247 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2772.

 Ello no infringe el principio de legitimación registral recogido en el segundo párrafo del Art. 64 de la Ley Hipotecaria, *supra,* dispositivo de que los Registradores no pueden apreciar la legalidad de las calificaciones efectuadas ni de los asientos extendidos con anterioridad por sus predecesores o por ellos mismos. Todo lo contrario, su proceder está en consonancia con el Art. 68(2) de la Ley Hipotecaria, 30 L.P.R.A. sec. 2271, que al remitirse a las faltas que impiden la registración señala "[l]as que se originen de obstáculos del Registro". Deben, pues, las recurrentes Alameda y Metropolitan, mediante documentos complementarios corregidos u actas, subsanar esa deficiencia.

Por los fundamentos antes expuestos, *se dictará sentencia confirmatoria.*

El Juez Presidente Señor Pons Núñez no intervino.