EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Antonio Ramos González Recurrente v. Ramiro Moure y Sucesión de Regalada Torres Picón, José Millet Guzmán y otros Recurridos | Solicitud de Revisión 2000 TSPR 57 |
| --- | --- |

Número del Caso: RE-1992-0290

Fecha: 03/04/2000

Tribunal de Primera Instancia, Sala Superior de Arecibo

Juez: Hon. Benito Díaz Laureano

Abogados de la Parte Peticionaria: Lcdo. Luis A. Medina Torres

Abogados de la Parte Recurrida: Lcda. Victoria del Valle

Abogado de los co-demandados-recurridos: Cordero, González & Asoc.
Lcdo. Jorge A. González Lugo

Materia: Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Antonio Ramos González

    Recurrente

       v.                  RE-1992-290

Ramiro Moure, et als.

    Recurridos

**SENTENCIA**

San Juan, Puerto Rico a 3 de abril de 2000

El 23 de abril de 1986, el peticionario, Antonio Ramos González, presentó demanda solicitando reconocimiento de su crédito hipotecario sobre una porción segregada propiedad de los recurridos, Ramiro Moure y la sucesión de Regalada Torres.

Luego de los trámites de rigor, el foro de instancia determinó, basándose en el informe que le rindiera el Comisionado Especial, que el pagaré garantizado por hipoteca se convirtió en pagaré personal.

El peticionario acudió ante nos en revisión para que se revoque la sentencia de instancia

dictada el 22 de mayo de 1992.

Luego de haber analizado y estudiado el recurso, el Juez Presidente señor Andréu García y la Juez Asociada señora Naveira de Rodón confirmarían la sentencia del foro de instancia por los fundamentos expresados en la opinión de conformidad y concurrencia suscrita por la Juez Asociada señora Naveira de Rodón, el Juez Asociado señor Corrada del Río también confirmaría pero por distintos fundamentos. El Juez Asociado señor Negrón García y el Juez Asociado señor Fuster Berlingeri revocarían la sentencia dictada por el foro de instancia. Los Jueces Asociados señores Rebollo López y Hernández Denton no intervinieron.

Por no haber expresión mayoritaria del Tribunal que recoja los mismos fundamentos, se confirma mediante esta sentencia el dictamen del entonces Tribunal Superior, Sala de Arecibo.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García, la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Corrada del Río están conformes con esta sentencia. Sin embargo, la Juez Asociada señora Naveira de Rodón emitió una opinión de conformidad y concurrencia a cual se unió el Juez Presidente señor Andréu García recogiendo los fundamentos por los cuales confirmarían al foro de instancia. El Juez Asociado señor Negrón García disintió del resultado por entender, que ante el trasfondo fáctico procesal y registral expuesto, la naturaleza real del crédito hipotecario del peticionario Antonio Ramos González, no quedó desvirtuada por una acción judicial resolutoria apoyada en el precio aplazado, que si bien surgía del Registro de la Propiedad, no cumplió con el requisito de **condición resolutoria expresa**, según la doctrina expuesta desde Bas v. Ferrán, 14 D.P.R. 190 (1908). El Juez Asociado señor Fuster Berlingeri disintió sin expresión. Los Jueces Asociados señores Rebollo López y Hernández Denton no intervinieron.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Antonio Ramos González

    Recurrente

      v.                      RE-1992-290

Ramiro Moure, et als.

    Recurridos

**Opinión de conformidad y concurrencia de la Juez Asociada señora Naveira de Rodón a la cual se une el Juez Presidente señor Andréu García.**

San Juan, Puerto Rico, a 3 de abril de 2000

I

El Sr. Ramiro Moure y su esposa, la Sra. Regalada Torres (en adelante Moure-Torres), eran titulares de una finca con cabida de 116 cuerdas en Arecibo. El 17 de junio de 1976, otorgaron una escritura de compraventa (en adelante Escritura Núm. 12) de dicha finca a favor del Sr. Antonio Jaca y su esposa, Sra. Nilsa Flores, (en adelante Jaca-Flores) por la suma de $90,000. Dicha escritura fue presentada en el Registro de la Propiedad el 25 de agosto de 1976. El 8 de julio de 1976, los esposos Jaca-Flores otorgaron una escritura de segregación (en adelante

Escritura Núm. 25) de una porción de 25.5377 cuerdas de la finca adquirida de los esposos Moure-Torres. En esa misma escritura constituyeron hipoteca en garantía de pagaré al portador por la suma de $15,000 sobre la porción segregada. El pagaré fue vendido al Sr. Antonio Ramos González (en adelante peticionario). La parcela segregada se subdividió, por contratos bilaterales con los esposos Jaca-Flores, en diecisiete (17) parcelas a favor de diferentes poseedores.

Al otorgamiento de la Escritura Núm. 25 sólo comparecieron los esposos Jaca-Flores. Dicha escritura expuso que la segregación aparecía libre de cargas, se declaró la hipoteca constituida en primer rango, y se presentó al Registro el 25 de agosto de 1976. La Escritura Núm. 12 y la Escritura Núm. 25 se presentaron al Registro consecutivamente. **El Registrador inscribió la finca segregada como finca nueva, libre de cargas, la hipoteca a favor del peticionario como de primer rango y <u>no tomó anotación marginal de la segregación en el asiento de inscripción de la finca matriz</u>**. La finca matriz continuó con su historial registral sin tener constancia de la parcela segregada. Por otro lado, la inscripción de la parcela segregada hizo mención de la finca matriz precedente, y continuó con su historial registral separado.[1]

El 11 de noviembre de 1976, los esposos Moure-Torres instaron una demanda ante el entonces Tribunal Superior, Sala de San Juan, contra los esposos Jaca-Flores y los diecisiete (17) poseedores de las parcelas subdivididas de la porción segregada de 25.5377 cuerdas.[2] Solicitaron la nulidad de la Escritura Núm. 12, rescisión de contrato y

---

[1] Esto es, según surge de las certificaciones que emitiera el Registrador correspondientes a sendos historiales registrales.

[2] Del historial registral de la finca matriz **no** aparece que ésta fuese segregada, por lo que los diecisiete (17) poseedores de las porciones subdivididas de esas 25.5377 cuerdas aparecen como poseedores de una porción y no de una porción segregada. De hecho, en el párrafo 15 de la referida demanda estos poseedores "se incluyen como co-demandados..., como personas desconocidas que pueden estar en posesión de la finca o parte de la finca... " Registralmente, los Moure-Torres no tenían cómo saber que la finca estaba segregada.

daños y perjuicios por incumplimiento de contrato debido a que los esposos Jaca-Flores no pagaron los plazos estipulados en dicha escritura.

El 8 de enero de 1979, el tribunal de instancia emitió una sentencia en rebeldía mediante la cual declaró con lugar la demanda contra los co-demandados Jaca-Flores, y ordenó al Registrador de la Propiedad, Sección de Arecibo, que cancelara el título a favor de los esposos Jaca-Flores y procediera a registrar la finca a favor de los esposos Moure-Torres. Dicha sentencia se inscribió en el Registro de la Propiedad el 17 de diciembre de 1980. El tribunal aceptó una estipulación radicada por los esposos Moure-Torres y los diecisiete (17) poseedores de las parcelas subdivididas en la cual los Moure-Torres le concedieron reconocimiento pleno a los diecisiete (17) contratos sobre cabidas, precio, abono y balances adeudados otorgados por Jaca-Flores con posterioridad al 16 de junio de 1976. Dicha estipulación formó parte de la sentencia. El peticionario, señor Ramos, no fue parte en este pleito.

Los esposos Jaca-Flores también incumplieron lo pactado en la Escritura Núm. 25 en cuanto a la obligación hipotecaria. Con posterioridad a la presentación de la demanda de los Moure-Torres, el peticionario radicó una demanda de ejecución de hipoteca contra los esposos Jaca-Flores el 20 de septiembre de 1977 y obtuvo sentencia a su favor el 8 de marzo de 1979. En esta demanda no se notificó ni emplazó a los esposos Moure-Torres, quienes figuran en la escritura matriz como acreedores de precio aplazado sobre la totalidad de la finca, incluyendo la porción de 25,5377 cuerdas.[3] El peticionario aceptó la

---

[3] De las certificaciones emitidas por el registrador relativas a la finca matriz y la finca segregada surge que aunque en el historial de la finca matriz no se hace mención alguna de la segregación, como se debió de haber hecho, el historial de la finca segregada menciona a la finca matriz con su número registral. Para la fecha de la demanda en ejecución de hipoteca, todavía no había pasado el término del precio aplazado. El peticionario se debió de haber percatado que la finca matriz no hacía mención alguna de la segregación sujeta a hipoteca.

nulidad de dicha adjudicación por no haberse notificado a los esposos Moure-Torres y éstos ser parte indispensable en el caso.[4]

Ante este cuadro fáctico, el peticionario presentó demanda el 23 de abril de 1986,[5] solicitando el reconocimiento de su crédito hipotecario sobre la porción segregada de 25.5377 cuerdas ya que la sentencia emitida por el Tribunal Superior, Sala de San Juan, contra los Jaca-Flores no le podía afectar a él. El tribunal de instancia designó a un Comisionado Especial para que, a tenor con la Regla 41 de Procedimiento Civil, 32 L.P.R.A. Ap. III, suscribiera un informe y emitiera una recomendación en torno a las controversias planteadas.

El Comisionado celebró una primera reunión con las partes el 23 de junio de 1990 y otra el 10 de septiembre de 1990. Se celebró una vista final el 27 de noviembre de 1990. En la vista final los diecisiete (17) codemandados ratificaron la transacción hecha con los Moure-Torres por la cantidad de $18,500. Dicha cantidad fue depositada en una cuenta particular en un banco privado.[6]

El tribunal de instancia, basándose en el informe del Comisionado, emitió una sentencia el 22 de mayo de 1992 y declaró sin lugar la demanda. Condenó al demandante, aquí peticionario, al pago de costas y $3,000 de honorarios de abogado. El tribunal determinó: (1) que el pagaré garantizado por hipoteca se convirtió en pagaré personal cuando el tribunal de instancia determinó la nulidad de la Escritura Núm. 12,

---

[4] En el expediente del caso no aparece la demanda en ejecución de hipoteca ni su subsiguiente sentencia ni los detalles de la venta judicial. Sin embargo, el peticionario admite en el recurso que debió haber notificado a los Moure-Torres y que, por ende, dicha venta judicial era nula. Recordemos que la sentencia archivada en autos el 17 de enero de 1979 a favor de los Moure-Torres, se inscribió en el Registro el 17 de diciembre de 1980, **después** que el peticionario obtuviera sentencia a su favor para ejecutar su hipoteca sobre la porción segregada.

[5] Ésta se titulaba "Demanda sobre Sentencia Declaratoria y Daños y Perjuicios" contra los Moure-Torres y los diecisiete (17) poseedores. Dicha demanda fue enmendada el 14 de abril de 1988 a una "Demanda de Cobro y Ejecución de Hipoteca".

[6] Esta cuenta alcanza, por los intereses, la suma de más de $27,500, pero del expediente no surge hasta qué fecha se han computado estos intereses.

(2) restituyó el título de propiedad a favor de los Moure-Torres y, (3) ordenó al Registrador inscribir dicha propiedad a favor de los Moure-Torres. Decretó, además, que ni la finca matriz, ni los sucesores de los esposos Moure-Torres, ni los diecisiete (17) poseedores de las parcelas subdivididas responden por el pagaré emitido a favor del peticionario. Posteriormente, el 12 de junio de 1992, dicho tribunal emitió una sentencia enmendada en cuanto a la distribución de los honorarios de abogado que debía pagar el peticionario:[7] $1,500 a los esposos Moure-Torres y los otros $1,500 a los diecisiete (17) poseedores.

Inconforme, el peticionario acudió ante nos para pedir que se revoque la sentencia dictada por el Tribunal Superior, Sala de Arecibo, el 22 de mayo de 1992, archivada en autos el 1 de junio de 1992.[8] Éste hizo los siguientes señalamientos:

(a) erró el tribunal a quo al determinar que la sentencia de 8 de enero de 1979, caso núm. 77-7720(905), Tribunal Superior de San Juan, tuvo el efecto de anular todos los derechos inscritos en el Registro de la Propiedad con anterioridad a la fecha de la radicación de la demanda y sin que esos terceros fueran partes demandadas en dicho pleito; y

(b) erró el tribunal a quo al negarse a darle valor a la hipoteca de $15,000 debidamente inscrita en el Registro de la Propiedad.[9]

---

[7] También fue enmendada la conclusión de derecho Núm. 6(4) en cuanto a que no adjudicarán el pago de la cantidad básica a intereses entre demandados ya que no se trajo al pleito conforme a los procedimientos constituidos.

[8] La segunda sentencia enmendada del 12 de junio de 1992, archivada en autos el 6 de julio de 1992, fue dictada sin jurisdicción ya que el peticionario había presentado su recurso de revisión de la primera sentencia el 1 de julio de 1992. Véase, 32 L.P.R.A. Ap. III R. 53.9 (antes de ésta ser enmendada el 25 de diciembre de 1995 por la Ley Núm. 249).

[9] En el tercer señalamiento el peticionario adujo que: "erró el tribunal a quo al imponer la suma de $3,000 por concepto de honorarios de abogados, en forma caprichosa, sin solicitud expresa de parte y en ausencia del elemento de temeridad necesario para que procedan dichos honorarios". Este tercer error carece de mérito ya que reiteradamente hemos resuelto que el tribunal puede imponer honorarios sin la necesidad de mencionar expresamente la existencia de temeridad. Basta con imponer honorarios para determinar temeridad. Dicha imposición es discrecional del tribunal y no a solicitud de parte. Véase, Rivera Rodríguez v. Tiendas Pitusa, Op. de 28 de junio de 1999, 147 D.P.R. ___, 99 J.T.S. 107, pág. 1246; Blás Toledo v. Hosp. Nuestra Señora de la Guadalupe, Op. de 30 de junio de 1998, 146 D.P.R. ___, 98 J.T.S. 101, pág. 1437.

Debido a que la garantía hipotecaria fue uno de los derechos inscritos anulados en la sentencia del Tribunal Superior de San Juan, discutiremos conjuntamente los señalamientos de error.

II

Para resolver la controversia ante nuestra consideración, es necesario discutir el fenómeno de la doble inmatriculación, ignorada por el tribunal inferior y esencial para analizar los señalamientos de error.

A.

Por lo general, el sistema de derecho inmobiliario registral en Puerto Rico está predicado en la certeza y corrección de sus inscripciones. Para garantizar esta certeza y corrección, el Registrador de la Propiedad, entre otras funciones, debe cerciorarse que los inmuebles que se presenten para la inscripción no consten inscritos de antemano. Cruz Fontánez v. Registrador, 126 D.P.R. 182, 186 (1990);[10] Alameda Tower Associates v. Muñoz Román, 129 D.P.R. 698, 707 (1992). De esta manera se persigue evitar el fenómeno de la doble inmatriculación.[11] Cruz Fontánez v. Registrador, supra, págs. 186-187.

Según la doctrina española,[12] la doble inmatriculación es el hecho que una misma finca se encuentre inmatriculada en dos (2) folios

---

[10] En aquel caso aplicamos el Art. 251 de la Ley Hipotecaria de 1979, 30 L.P.R.A. § 2776, el cual no tenía vigencia al momento de los hechos del caso de marras.

[11] El Art. 251 de la Ley Hipotecaria de 1979, supra, dispone el procedimiento a seguir cuando existe doble inmatriculación. Dicho Art. 251 fue enmendado en términos generales por la Ley Núm. 4 de 13 de febrero de 1996, 30 L.P.R.A. § 2776 (Supl. 1998). Sin embargo, no existe artículo equivalente en la Ley Hipotecaria de 1893, la cual aplicaría a los hechos ante nos dado que las escrituras objeto de controversia fueron otorgadas e inscritas antes de la vigencia de la Ley Hipotecaria de 1979. Por esta razón, es menester recurrir a nuestra jurisprudencia y a los tratadistas.

[12] En ese caso citamos a José María Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, Madrid, Ed. Marcial Pons, 1981, T.I, págs. 827-

independientes uno del otro. Existe doble inmatriculación cuando las dos (2) fincas son absolutamente indénticas entre sí, aunque sus respectivas descripciones estén hechas de una manera distinta. **Hay también doble inmatriculación si una de las fincas coincide sólo parcialmente o se encuentra superpuesta con respecto de otra**. (Énfasis suplido.) <u>Cruz Fontánez</u> v. <u>Registrador</u>, supra, pág. 186; *véase* <u>Pérez Cruz</u> v. <u>Fernández</u>, 101 D.P.R. 365, 371-372 (1973).

La doble inmatriculación de fincas "constituye un grave mal en la mecánica registral inmobiliaria, que puede producirse incluso en los sistemas registrales más perfectos en su base catastral, por cuanto el error es siempre posible... ." Roca Sastre y Roca-Sastre Muncunill, *Derecho Hipotecario*, Tomo III, Ed. Bosch, Barcelona, 1979, pág. 251. Los tratadistas añaden:

> Nuestra legislación hipotecaria, ni antes ni ahora [1979], se ha ocupado de tales remedios represivos o correctores de esta anormalidad... , no da pauta alguna que haya de servir para determinar lo que deba hacerse en estos casos en el sentido de atribuir prevalencia a una de las inmatriculaciones dobles u [sic] múltiples acaecidas.[13] *Id*. pág. 252.

El problema de la doble inmatriculación es grave "porque, ante ese hecho, puede quebrar el presupuesto de *fe pública registral* y las presunciones que de él se derivan...". (Bastardillas en texto original.) De Casso Romero, *Derecho Hipotecario o del Registro de la Propiedad*, 4ta ed., Instituto de Derecho Civil, Madrid, 1951, págs. 366-367.

Ante este problema, la doctrina y la jurisprudencia **les niega a sendas fincas la protección registral**, debiéndose adjudicar la cuestión planteada a base de las reglas de derecho civil **sin la protección de la Ley Hipotecaria**. (Énfasis suplido.) <u>Pérez Cruz v. Fernández</u>, supra,

---

828, para expresar lo dicho por los tratadistas españoles Luis Díez-Picazo y Ramón M. Roca Sastre.

[13] Recordemos que la Ley Hipotecaria de 1979, supra, sí le dio tratamiento expreso, sin embargo, ésta es inaplicable al caso ante nos por razones discutidas en la nota de calce Núm. 10.

págs. 371-372;[14] reiterado en <u>Alameda Tower Associates</u> v. <u>Muñoz Román</u>, supra, pág. 707.

En el caso ante nos se presenta el problema de la doble inmatriculación ya que existen dos historiales distintos, bajo folios diferentes, de una parte de una misma finca. Este problema era de fácil evasión si el registrador hubiese tenido la diligencia de anotar la segregación en la finca matriz.[15] No lo hizo, alterando así la certeza y corrección que debe predicar el Registro de la Propiedad.

III

Al determinar que la doctrina de doble inmatriculación impide la aplicación de la ley hipotecaria y abre la puerta a los preceptos generales de derecho civil común, es menester recordar lo establecido en la primera de las Reglas de Procedimiento Civil de 1958 [derogada], 32 L.P.R.A. Ap. II R1:[16] "Estas reglas... [s]e interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento."

Con esta primera regla en mente, procederemos a discutir la regla de procedimiento civil que regula la acumulación de parte indispensable.[17] La Regla 16.1 de las de Procedimiento Civil de 1958 disponía:

---

[14] En este caso se le negó al peticionario la defensa de tercero hipotecario.

[15] Sobre este particular, en el esc. 1, pág. 251 de su obra *Derecho hipotecario*, supra, Roca Sastre expresa "la búsqueda equivocada de los índices o las deficiencias de los mismos, **el olvido de extender la correspondiente nota marginal a la finca matriz** para la constancia en los libros del hecho de la segregación de la parte de la misma para formar finca independiente... coadyuvan a la posibilidad del supuesto [de la doble inmatriculación). (Énfasis nuestro.)

[16] Similar disposición se adoptó en la primera regla de las de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III.

[17] Disposición semejante aparece en la Regla 16.1 de las de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, la cual estipula que "las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como

Una parte indispensable es aquella persona cuyos derechos e intereses **podrían quedar destruidos o inevitablemente afectados** por una sentencia dictada **estando esa persona ausente del litigio.** (Énfasis nuestro.)

Dicha disposición se creó a la luz de los preceptos del debido procedimiento de ley. La sentencia emitida por el Tribunal Superior, Sala de San Juan, el 8 de enero de 1979 afectó directamente la garantía hipotecaria del peticionario estando éste ausente de dicho litigio. El peticionario, por ende, era parte indispensable en ese pleito. Los efectos de esa sentencia no pueden operar contra el señor Ramos González, aquí peticionario, por lo que teóricamente su garantía hipotecaria debió de haber permanecido inalterada.

La situación se complica, sin embargo, con la existencia de la doble inmatriculación,[18] la cual hace inaplicable la Ley Hipotecaria y la protección registral. Con esto en mente debemos recordar que la existencia de una garantía hipotecaria, *erga onmes* et *in rem*, es constitutiva y regida por el Derecho Hipotecario. Al no haber protección registral, se desvirtúa la garantía al punto de hacerla exigible contra la propiedad solamente si los titulares de la misma fueran los deudores Jaca-Flores. La deuda se considera entonces como una obligación personal regida por el Código Civil. Por consiguiente, los Moure-Torres no son responsables por la deuda que los Jaca-Flores contrajeran con el peticionario, ni los $15,000 tienen valor hipotecario contra la finca objeto de controversia por el hecho de

---

demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada".

[18] La doble inmatriculación es una falta atribuible, en este caso, al Registrador. Esta falta acarrea la entrada del derecho civil común y la inaplicabilidad del Derecho Registral Inmobiliario. **Hubiese sido otro el resultado** de no haber habido la doble inmatriculación ya que, al no poder oponérsele la sentencia del 8 de enero de 1979 al peticionario, el derecho aplicable es el hipotecario. Por ende, la hipoteca constituida tendría todo el valor hipotecario en perjuicio de los Moure-Torres, quienes no incluyeron al acreedor hipotecario, **según se supone que hubiese aparecido en el registro**, como parte indispensable en el pleito contra los Jaca-Flores. También tenemos que recalcar que el peticionario sabía la existencia de la finca matriz, y debió de haberse percatado que la segregación no constaba en anotación

haber una doble inmatriculación.    En consecuencia, los dos errores señalados no se cometieron.

Por los fundamentos antes reseñados, estamos conforme y concurrimos con la sentencia que hoy emite el Tribunal.


MIRIAM NAVEIRA DE RODÓN
Juez Asociada

---

marginal de la finca matriz.    Omitió resaltar dicha falta que podía menoscabar, como así lo hizo, su crédito hipotecario.