EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Tomás Medina Garay y Rogelio Medina Garay<br><br>Recurridos<br><br>Vs.<br><br>Gladys Luz Medina Garay, et als.<br><br>Peticionarios | Certiorari<br><br>2007 TSPR 18<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2005-481

Fecha: 26 de enero de 2007

Tribunal de Apelaciones:

                    Región Judicial de Humacao


Panel integrado por su Presidenta la Juez Pesante Martínez y los Jueces Salas Soler y Escribano Medina


Abogado de la Parte Peticionaria:

                    Lcdo. Jorge Calero Blanco

Abogado de la Parte Recurrida:

                    Lcdo. Gustavo A. Quiñones Pinto


Oficina del Procurador General

                    Lcda. Sylvia Roger Stefani
                    Procuradora General Auxiliar


Materia: Acción Civil, Partición de Herencia, Nulidad de Compra Venta



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Tomás Medina Garay y
Rogelio Medina Garay

     Recurridos

       Vs.                  CC-2005-481  Certiorari

Gladys Luz Medina Garay,
Et als.

     Peticionarios

Opinión del Tribunal emitida por el Juez Asociado, SEÑOR FUSTER BERLINGERI.

San Juan, Puerto Rico, a 26 de enero de 2007.

Tenemos la ocasión de resolver si la protección de la tercería registral puede cobijar al adquirente de una propiedad que aparece inscrita dos veces en el Registro de la Propiedad a nombre de un mismo titular.

I.

El Conquistador Partnership, L.P., (en adelante **El Conquistador** o **la parte peticionaria**) solicita la revisión de una sentencia emitida por el Tribunal de Apelaciones el 7 de febrero de 2005. Mediante dicho dictamen el referido foro resolvió que El Conquistador no gozaba de la protección de la fe pública registral y le impuso

el pago de las costas del pleito. Veamos los hechos que dan lugar a la controversia.

El 16 de octubre de 1972, los esposos Juan Tomás Medina y Gloria Garay vendieron en $5,000 dos parcelas de terreno (denominadas como "**A**" y "**B**") a su hija Carmen Lydia Medina Garay y su esposo Miguel Ángel Ortiz (en adelante el matrimonio Ortiz-Medina). La parcela "A", ubicada en el Barrio Cabezas de Fajardo, consistía de 90 centésimas de cuerda y en ella existía una casa de madera. Por otra parte, la parcela "B", ubicada en el mismo barrio, consistía de 12 centésimas de cuerda y en ella enclavaba una casa de concreto y hormigón.[1]

Posteriormente, el matrimonio Ortiz-Medina presentó una solicitud de expediente de dominio ante el Tribunal de Primera Instancia. El 26 de julio de 1974, el Tribunal de Primera Instancia declaró "con lugar" la referida solicitud y el matrimonio Ortiz-Medina promovió la inscripción de las fincas en el Registro de la Propiedad. El 18 de septiembre de 1974, la parcela "A" fue inscrita como la finca 8,060 en el Folio 280, del Tomo 216 de la sección de Fajardo del Registro de la Propiedad. Por su parte, la parcela "B" fue inscrita como la finca 8,061 en el Folio 285 del Tomo 216 de la misma sección del Registro.

---

[1] Los asientos de inscripción registral se refieren a la unidad de medida de las fincas como "centavos de cuerda", esto es, se dice que la parcela A mide *90 centavos de cuerda* y la parcela B mide *12 centavos de cuerda*.

En el 1980 y en el 1984 respectivamente, Gloria Garay y Juan Tomás Medina fallecieron intestados.[2] Posteriormente, en el año 1988, **ambas fincas fueron objeto de una segunda inscripción <u>a nombre de los mismos titulares</u> por un error del Registrador de la Propiedad.**[3] En particular, la parcela "A" fue inscrita como la finca 14,278 en el Folio 1 del Tomo 333, mientras que la parcela "B" fue inscrita como la finca 14,279 en el Folio 6 del Tomo 333.

Así las cosas, en mayo de 1992 el matrimonio Ortiz-Medina le vendió a El Conquistador la parcela "B" por $45,000. En esa misma fecha, la señora Gladys Luz Medina Garay y su esposo Isaías García Estrada, quienes habían ocupado la estructura enclavada en la parcela "B", le cedieron a El Conquistador cualquier derecho que éstos tuviesen sobre la misma a cambio de $26,000.

El 23 de julio de 1993, dos de los herederos del matrimonio Medina-Garay, los Sres. Tomás Medina Garay y Rogelio Medina Garay (en adelante **los demandantes-recurridos**) presentaron una demanda contra el resto de los herederos, El Conquistador, el Municipio de Fajardo, la

---

[2] Varios años después, en mayo de 1995, el Tribunal de Primera Instancia emitió una resolución sobre declaratoria de herederos en el caso CD95-274. Dicho foro declaró como únicos y universales herederos de los esposos Medina-Garay a sus hijos: Tomás; Rogelio; Gladys Luz; Carmen Lydia; y Noemí -todos de apellidos Medina Garay- así como a Domingo y Reina Medina Vidal, en representación del para entonces fallecido Domingo Medina Garay, y en representación del también fallecido Severiano Medina Garay, a Ruth Lillian y Daisy Luz Medina.

[3] El hecho de que el error es atribuible al Registrador no está en controversia.

Autoridad de Carreteras, y el Departamento de Transportación y Obras Públicas.[4] Alegaron, en síntesis, que la compraventa efectuada entre los esposos Ortiz-Medina y Medina-Garay era nula por falta de causa. Además adujeron que el título de dominio sobre la finca ostentado por El Conquistador era nulo porque los esposos Ortiz-Medina y Estrada-Medina no tenían facultad para transferirlo. Solicitaron que se declarara la nulidad de las compraventas, que se realizara la partición de la herencia, y que se les entregaran sus respectivas participaciones en la misma.

Tras los incidentes procesales de rigor, el Tribunal de Primera Instancia dictó una sentencia mediante la cual determinó, *inter alia*, que el contrato de compraventa suscrito entre el matrimonio Medina-Garay y el matrimonio Ortiz-Medina carecía de causa y lo declaró nulo. **El foro de primera instancia también determinó que El Conquistador no gozaba de la protección de la tercería registral dado que del propio Registro surgía un problema de doble inmatriculación**. El aludido foro concluyó además que tanto la parcela "A", como el valor correspondiente a la parcela "B" y a la estructura que había en ésta antes de su demolición,[5] correspondía por partes iguales a la sucesión Medina Garay.

---

[4] Desde tempranas etapas del proceso, el Municipio, la Autoridad, y el Departamento Transportación dejaron de formar parte del mismo.

[5] La referida estructura fue demolida para facilitar una construcción posterior realizada por el Estado Libre Asociado de Puerto Rico.

A tenor con lo antes expuesto, el Tribunal de Primera Instancia ordenó que la finca "A" fuese entregada a la sucesión Medina-Garay para ser dividida entre los herederos. En vista de que El Conquistador había cedido el dominio de la finca "B" a un tercero, el foro de primera instancia determinó que éste, los esposos Ortiz-Medina y los esposos Estrada-Medina responderían solidariamente por el valor de la finca y la estructura demolida.

Inconforme, El Conquistador recurrió ante el entonces Tribunal de Circuito de Apelaciones. Los demandantes-recurridos presentaron una moción de desestimación ante dicho foro en la cual alegaron que El Conquistador no notificó su escrito de apelación dentro del término jurisdiccional a la codemandada Noemí Medina Garay. Por su parte, El Conquistador alegó que no notificó a dicha codemandada pues ésta no era "parte" en el litigio dado que no fue debidamente emplazada.

Tras evaluar los argumentos de las partes, el foro apelativo desestimó el recurso instado por El Conquistador por falta de jurisdicción. Insatisfecho, El Conquistador acudió ante nos. En aquella ocasión, este Tribunal expidió el auto solicitado, revocó el dictamen del Tribunal de Apelaciones y devolvió el recurso a dicho foro para su disposición en cuanto a los méritos. Véase: Medina Garay v. Medina Garay, res. el 19 de mayo de 2004; 161 D.P.R.___; 2004 TSPR 75; 2004 JTS 79.

Así las cosas, el 7 de febrero de 2005 el Tribunal de Apelaciones dictó una sentencia mediante la cual confirmó la determinación del foro de primera instancia al resolver que la parte peticionaria no gozaba de la protección de la fe pública registral.[6] Inconforme, El Conquistador acudió ante nos, y solicitó la revisión de dicho dictamen. En síntesis, la parte peticionaria alega que tiene derecho a la protección que la ley concede al tercero registral independientemente de que la transacción entre Carmen Medina Garay y sus padres haya sido una simulada.[7]

El 26 de agosto de 2005 expedimos el auto de *certiorari* según solicitado. El 15 de noviembre del mismo año declaramos con lugar la solicitud de la parte peticionaria al amparo de la Regla 33(k) de nuestro Reglamento a los efectos de que el asunto quedase sometido sin necesidad de presentar un alegato. En la misma Resolución concedimos un término adicional a los demandantes-recurridos para que

---

[6] Inicialmente, el foro apelativo modificó la sentencia del Tribunal de Primera Instancia en cuanto a la imposición de costas y devolvió el caso a dicho foro para que dilucidara la procedencia de la demanda contra coparte presentada por El Conquistador. En reconsideración, el Tribunal de Apelaciones modificó su sentencia para dejar en vigor la aprobación del memorando de costas hecha por el foro de primera instancia.

[7] El Conquistador planteó los siguientes señalamientos de error:

1. "Erró el Tribunal de Apelaciones al no conceder a El Conquistador la protección de 'tercero registral'".

2. "Erró el Tribunal de Apelaciones al, en reconsideración, aprobar en su totalidad el memorando de costas de la parte demandante".

3.

**Formatted:** Bullets and Numbering

presentaran su alegato. Estando en posición de resolver, procedemos a hacerlo.

## II.
### A.

Acorde con la tradición española, nuestro ordenamiento jurídico inmobiliario reconoce el Principio de Fe Pública Registral (o Publicidad Material). <u>Banco de Santander v. Rosario Cirino</u>, 126 D.P.R. 591, 601 (1990). El mismo está incorporado a través del artículo 105 de la Ley Hipotecaria[8] el cual dispone, en lo pertinente, lo siguiente:

> A pesar que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos, **el tercero que de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo será mantenido en su adquisición, una vez haya inscrito su derecho, cuando por cualquier razón resulte inexacto el Registro, bien sea que se rescinda, resuelva o anule el título del otorgante en virtud de causas que no resulten clara y expresamente del propio Registro,** o que existan sobre la finca acciones o títulos de dominio o de otros derechos reales que no estén debidamente inscritos. (énfasis suplido)
>
> .....
>
> La buena fe del tercero se presume siempre mientras no se prueba que al adquirir conocía la falta de exactitud del Registro.
>
> .....

En virtud del citado precepto, nuestro Derecho Registral Inmobiliario protege a todos aquellos que reúnan las condiciones para ser considerados terceros registrales.

---

[8] 30 L.P.R.A. § 2355.

Se considera tercero a quien adquiera un derecho real confiando en las constancias del Registro de la Propiedad. Banco Santander v. Rosario Cirino, *supra*, pág. 601; Véase además, Infante Robles v. Maeso Hernández, 165 D.P.R. __; 2005 TSPR 118; 2005 JTS 123; y Mundo v. Fuster, 87 D.P.R. 363, 376 (1963). Para que opere la referida protección, se exige que aquel que la invoque cumpla con todos los requisitos establecidos en el Artículo 105, *supra*, los cuales, según hemos expresado anteriormente, pueden recogerse en la siguiente máxima: *deberá tratarse de un tercero civil que de buena fe y a título oneroso, en función de un registro inexacto, adquiera, en un negocio intervivos válido, un derecho real inmobiliario inscrito a nombre de una persona que según las constancias del Registro tenga facultades para transmitirle, sin que consten clara y expresamente las causas de la inexactitud, ni concurra alguna de las excepciones a la aplicación de la fe pública registral y que, a su vez, haya inscrito su adquisición.* Banco Santander v. Rosario Cirino, *supra*, pág. 603-604.

B.

Nuestro derecho registral inmobiliario está predicado en la presunción de certeza y corrección de las inscripciones que constan en el Registro de la Propiedad. Es por ello que una de las funciones más críticas de los Registradores de la Propiedad es cerciorarse de que los documentos que se presenten para inscripción no consten

inscritos de antemano. <u>Cruz Fontánez v. Registrador</u>, 126 D.P.R. 182, 186 (1990); <u>Rosado Collazo v. Registrador</u>, 118 D.P.R. 577, 582 (1987); <u>Acevedo v Registrador</u>, 115 D.P.R. 461, 462 (1984). De esta manera se trata de evitar el fenómeno de la doble inmatriculación. <u>Cruz Fontánez v. Registrador</u>, *supra*, págs. 186-187.

Por **doble inmatriculación** se entiende el hecho irregular de que una misma finca se encuentre inscrita en el Registro de la Propiedad en dos (o más) folios independientes uno del otro. Según comenta Roca Sastre, la doble inmatriculación "puede afectar a la totalidad de una finca, o bien, a una finca que solamente está doblemente inmatriculada en una porción de ella". Roca Sastre y Roca-Sastre Muncunill, <u>Derecho Hipotecario</u>, Tomo III, Ed. Bosch, Barcelona, 1995, pág. 263. (Énfasis omitido). El problema de la doble inmatriculación es grave "porque, ante ese hecho, puede quebrar el presupuesto de fe pública registral y las presunciones que de él se derivan...". De Casso Romero, <u>Derecho Hipotecario o del Registro de la Propiedad</u>, 4ta ed., Instituto de Derecho Civil, Madrid, 1951, págs. 366-367. (énfasis omitido.) Lamentablemente, este grave mal en la mecánica registral inmobiliaria "puede producirse incluso en los sistemas registrales más perfectos en su base catastral, por cuanto el error es siempre posible, cuando no interviene la mala fe...". Roca Sastre y Roca-Sastre Muncunill, op. cit., pág. 259.

CC-2005-481          10

La respuesta doctrinal y jurisprudencial ante la problemática de la doble inmatriculación ha sido negarle a los adquirentes de la finca en cuestión la protección de la tercería registral, debiéndose adjudicar las controversias planteadas a la luz de las reglas del Derecho Civil. Pérez Cruz v. Fernández, 101 D.P.R. 365, 371-372 esc. 6 (1973); Alameda Tower Associates v. Muñoz Román, 129 D.P.R. 698, 707 (1992). La necesidad de acudir a las Reglas de Derecho Civil para resolver la pugna entre las inscripciones y determinar cuál es la que debe prevalecer se debe a que la existencia de asientos de igual rango y naturaleza contradictorios e incompatibles entre sí constituiría un absurdo.

III.

A.

En el caso de marras, la Parcela B fue inmatriculada en dos ocasiones. Sin embargo, **ambas inscripciones fueron a nombre de los mismos titulares**. La parte peticionaria sostiene que bajo estas circunstancias en realidad no cabe hablar de una doble inmatriculación y debe mantenerse la protección registral a favor del tercero adquirente. Esto en vista de que en circunstancias como la de autos, quien adquiere algún derecho sobre la propiedad en cuestión no tiene incertidumbre alguna en cuanto al título de la finca, pues se trata de una simple repetición de la inscripción a favor del mismo dueño.

Los argumentos de la parte peticionaria son sustancialmente cónsonos con la postura al respecto asumida por Roca Sastre. Éste sostiene que cuando la misma finca está inmatriculada varias veces, pero a nombre de la misma persona, **"no hay... verdadera doble inmatriculación"**. R. Roca Sastre y L. Roca-Sastre Muncunill, Derecho Hipotecario, Ed. Bosch, Barcelona, Tomo III, pág. 263 (1995). No obstante, aunque la doble inscripción no haya originado una situación antagónica como tal, como en el caso de autos, existe el riesgo de que la misma surja si la finca se enajena o grava en virtud de una de las inscripciones. *Id*. pág. 229.[9]

B.

Amparándose en la opinión emitida por este foro en Cruz Fontánez v. Registrador, 126 D.P.R. 182 (1990), el Tribunal de Apelaciones resolvió que, independientemente de que la Parcela B estuviese inscrita dos veces a favor del mismo

---

[9] Así, Roca Sastre comenta lo siguiente:

> ...[M]ientras esta doble inmatriculación de finca se mantenga con el mismo y solo titular registral y con el estado de cargas y afecciones existentes, no hay de momento conflicto grave de doble inmatriculación, pero entre tanto subsiste el peligro de que este mismo titular, por ignorar incluso esta situación registral de normalidad, enajene o grave la finca, con la consiguiente inscripción del acto en una sola de las hojas o registros particulares de la finca, o, incluso que, por ignorancia, los herederos enajenen la misma finca a personas distintas, creyendo que son dos fincas diferentes, cuya creencia vendrá propiciada por el Registro. R. Roca Sastre y L. Roca-Sastre Muncunill, Op. cit. pág. 263, esc. 9.

titular, la parte peticionaria no estaba protegida por la figura del tercero registral. Dicho foro concluyó que El Conquistador tenía que esperar a que se corrigiera la situación registral irregular para luego adquirir la propiedad si pretendía contar con las protecciones de la tercería registral.

En Cruz Fontánez v. Registrador, *supra*, explicamos que, a pesar de que la doctrina mayoritaria española entendía que cuando una finca ha sido inmatriculada dos veces a favor de un mismo titular la anomalía puede ser corregida por el Registrador, nuestra Ley Hipotecaria ordenaba que se recurriese a los Tribunales para dilucidar el asunto y el Registrador no podía corregir de oficio el error. Señalamos que nuestra Asamblea Legislativa, al diferenciar el lenguaje del artículo 251 de la Ley Hipotecaria de su homólogo en la legislación española, expresó inequívocamente su deseo de que la normativa sobre doble inmatriculación incluyese los casos de varias inmatriculaciones a favor de un mismo titular. En esa ocasión comentamos que no nos correspondía cuestionar la sabiduría de dicha determinación legislativa. Cruz Fontánez v. Registrador, *supra*, pág. 189.

Es menester aclarar que en Cruz Fontánez v. Registrador no resolvimos expresamente que en casos de doble inmatriculación a favor de un mismo titular opera la excepción a la tercería registral que se ha reconocido para la doble inmatriculación a favor de distintos titulares. No obstante, aun si la interpretación del Tribunal de

Apelaciones a esos efectos fuese cónsona con el referido caso, no podemos perder de perspectiva que en el momento en que lo resolvimos el Art. 251 de la Ley Hipotecaria tenía un texto diferente al actual. El texto anterior disponía lo siguiente:

> Si el que tuviera inscrita a su favor una finca creyere que otra inscripción de finca señalada bajo número diferente se refiere al mismo inmueble y al mismo titular, podrá solicitar de la Sala del Tribunal Superior correspondiente que, con citación de todos los interesados y siempre que se pruebe la identidad de ambas fincas como un solo inmueble, dicte auto resolviendo cuál de ambas inscripciones subsistirá.

> Cuando la doble inmatriculación se refiera a distintos titulares se resolverá por juicio ordinario sobre la identidad de la finca y el mejor derecho al inmueble.

> En ambos casos se ordenará la cancelación de la inscripción correspondiente.

> Cuando el registrador notare que una fina aparece inscrita más de una vez, notificará de tal hecho a los presentantes y a los notarios autorizantes de los títulos inscritos en ambas fincas y pondrá una nota, a los efectos de haber enviado tal aviso, al margen del asiento correspondiente de las fincas. El registrador no procederá a practicar ningún otro asiento hasta tanto no se cumpla con lo dispuesto en esta sección para el caso de la doble inmatriculación.

Como vemos, bajo la formulación anterior del Art. 251 se requería que cuando las dos inscripciones tuviesen el mismo titular se acudiese al foro judicial para subsanar dicho defecto.

Luego de haberse resuelto <u>Cruz Fontánez v. Registrador</u>, *supra*, el Art. 251 fue enmendado para permitir que cuando una finca aparezca inscrita a favor del mismo titular y, en casos donde no existan cargas sobre la misma, la

discrepancia sea resuelta por el propio Registrador sin necesidad de intervención judicial.[10] El Art. 251 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2776, prescribe el vehículo procesal a través del cual se puede resolver la doble inmatriculación. Dicho artículo dispone lo siguiente:

> Si el que tuviera inscrita a su favor una finca creyere que otra inscripción de finca señalada bajo número diferente se refiere al mismo inmueble y al mismo titular, podrá solicitar del señor [Registrador] que, con citación de todos los interesados conforme lo dispuesto en las Reglas de Procedimiento Civil, Ap. III del Título 32, y siempre que se pruebe la identidad de ambas fincas como un solo inmueble, resuelva cuál de ambas inscripciones subsistirá, procediendo éste con la cancelación de una de ellas.

> No obstante, en aquellos casos en que todos los interesados no pueden ponerse de acuerdo, tendrán que acudir al Tribunal de Primera Instancia para resolver la controversia.

> Cuando la doble inmatriculación se refiera a distintos titulares se resolverá por juicio ordinario sobre la identidad de la finca y el mejor derecho al inmueble.

> En ambos casos se ordenará la cancelación de la inscripción correspondiente.

> **Cuando el Registrador notare que una finca aparece inscrita más de una vez, <u>a favor de un mismo titular</u>, notificará de tal hecho al presentante y al notario autorizante. Si no hay cargas en ninguna de las dos fincas, el titular procederá a hacer la petición correspondiente ante el Registrador de la Propiedad, quien resolverá sobre el particular.** De existir cargas en cualquiera de las dos fincas, el titular del dominio dará cumplimiento al procedimiento establecido en el primer párrafo de esta sección. (Énfasis suplido).

---

[10] Ley Núm. 4 de 13 de febrero de 1996.

Conforme al artículo antes transcrito, para resolver un caso de doble inmatriculación que envuelva distintos titulares, se tiene que celebrar un juicio ordinario. No obstante, cuando se trata del mismo titular y la misma finca, no es necesario acudir al tribunal. Nos parece razonable y apropiado concluir que el procedimiento no adversativo dispuesto en el último párrafo del Art. 251 constituye una expresión inequívoca de que la Asamblea Legislativa no ha pretendido extender a los casos de doble inmatriculación a favor de un mismo titular la excepción a la tercería registral que opera en caso de doble inmatriculación a favor de distintos titulares.

C.

A tenor con lo antes expuesto, resolvemos que **no existe impedimento para que se aplique la figura del tercero registral** en situaciones como la del caso de autos, **cuando una finca ha sido inmatriculada más de una vez a favor de un mismo titular y no se ha producido una enajenación o gravamen que conste en uno de los asientos de inscripción**. Esta conclusión es cónsona con la doctrina española de mayor peso, la cual según explicamos, entiende que la doble inmatriculación de una finca a favor de un mismo titular no derrota la protección del tercero registral.

En vista de lo anterior, no es necesario que nos pronunciemos en torno al segundo señalamiento de error

referente a la imposición de costas en contra de la parte peticionaria.

Por las razones antes expresadas se revoca la sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.


                         Jaime B. Fuster Berlingeri
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Tomás Medina Garay y
Rogelio Medina Garay

    Recurridos

      Vs.                CC-2005-481  Certiorari

Gladys Luz Medina Garay,
Et als.

    Peticionarios


SENTENCIA


San Juan, Puerto Rico, a 26 de enero de 2007.


      Por las razones expuestas en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo