Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| BAUTISTA CAYMAN ASSET COMPANY<br><br>Apelado<br><br>v.<br><br>RAÚL JOSÉ CASAS MILLARES, MARIANA ISABEL BOU CÓRDOVA, PAUL HORACIO CULPEPER AROBONA y otros<br><br>Apelantes | TA2026AP00119<br><br>consolidado<br><br>TA2026AP00129 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2024CV03357 (703)<br>Sobre:<br>Cobro de Dinero, Ordinario; Ejecución de Hipoteca; Propiedad Comercial |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2026.

Comparece ante nos la señora Mariana Isabel Bou Córdova; la señora María Mercedes Bou Córdova; el señor Antonio Félix Bou Córdova, y su esposa, la señora Wendolyn Bosques Cruz y la sociedad legal de bienes gananciales compuesta por ambos; el señor Sancho Javier Bou Córdova, y su cónyuge la señora Olinka Ximena Valderrama y la sociedad legal de bienes gananciales compuesta por ambos; la señora María Paola Culpeper Bou, el señor Paul H. Culpeper Bou y la señora María Mercedes Bou Córdova, en representación del menor Martín Eduardo Culpeper Bou, como coherederos del señor Paul H. Culpeper Bou Arbona[1], mediante *Recurso de Apelación* denominado alfanuméricamente como

---

[1] Surge del expediente ante nos que, originalmente la *Demanda* se presentó en contra del señor Paul H. Culpeper Arbona. Sin embargo, tras su fallecimiento, los sucesores mencionados procedieron a sustituirlo en virtud de la *Demanda Enmendada* el 1 de octubre de 2024.

TA2026AP00119, presentado el 6 de febrero de 2026. Asimismo, comparece ante esta Curia el señor Raphael Peña Ramón, la señora Patricia Mellie Culpeper Arbona y la sociedad legal de gananciales compuesta por ellos mediante *Escrito de Apelación* denominado alfanuméricamente como TA2026AP00129, presentado el 9 de febrero de 2026.[2]

En ambos recursos, nos solicitan que revoquemos la *Sentencia Sumaria* emitida y notificada el 22 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro primario" o "foro *a quo*"). Por virtud de la misma, el foro primario declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* instada por Bautista Cayman Asset Company ("Bautista" o "Apelado").

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* apelada.

## I.

El caso de autos tuvo su génesis el 7 de junio de 2024, cuando Bautista presentó *Demanda* sobre cobro de dinero y ejecución de prenda e hipoteca.[3] En esta, detalló que, para el 25 de octubre de 2005, celebró varios negocios jurídicos con el señor Raúl José Casas Millares, la señora Mariana Isabel Bou Córdova, el señor Paul Horacio Culpeper Arbona, la señora María Mercedes Bou Córdova, el señor Raphael Gerardo Peña Ramón y la señora Patricia Mellie Culpeper Arbona. Especificó que otorgó el préstamo #4321170

---

[2] En adelante y en conjunto "Apelantes".

[3] Véase, SUMAC TPI, Entrada Núm. 1.Conviene precisar que, la referida *Demanda* se presentó en contra de las siguientes personas: Raúl José Casas Millares, Mariana Isabel Bou Córdova y La Sociedad Legal de Gananciales compuesta por ambos; Paul Horacio Culpeper Arbona, María Mercedes Bou Córdova y La Sociedad Legal De Gananciales compuesta por ambos; Raphael Gerardo Peña Ramon, Patricia Mellie Culpeper Arbona y la Sociedad Legal De Gananciales compuesta por ambos; Wendolin Bosques Cruz, Antonio Félix Bou Córdova Y Sociedad Legal De Gananciales; Sancho Javier Bou Córdova, Olinka Ximena Valderrama y La Sociedad Legal De Gananciales compuesta por ambos. **A su vez, puntualizamos que, la mayoría de los demandados, aquí Apelantes, presentaron su contestación a la *Demanda*, con excepción del señor Raúl José Casas Millares, y la sociedad legal de bienes gananciales compuesta por este y la señora Mariana Isabel Bou Córdova, a quienes se les anotó rebeldía, según el foro primario determinó en la *Resolución* emitida el 4 de noviembre de 2025.**

21701 por la cantidad de $375,000.00. De acuerdo con sus alegaciones, dicho negocio jurídico quedó plasmado mediante un contrato de préstamo intitulado *Pagaré* (*Note*) (en adelante, "*Pagaré A*"). Adujo que, en esta misma fecha, se concedió el préstamo #4321221 22211, por la cantidad de $75,000.00, plasmado en el contrato de préstamo intitulado *Pagaré* (*Note*) (en adelante, "*Pagaré B*").

Cónsono con lo anterior, agregó que, para garantizar el pago de las obligaciones previamente descritas, las partes suscribieron una escritura de hipoteca que grava la finca descrita a continuación:

> R[Ú]STICA: Parcela de terreno localizado en el Barrio Los Frailes del término municipal de Guaynabo, Puerto Rico, con una cabida superficial de cinco mil (5,000.00) metros cuadrados, equivalentes a uno punto dos mil setecientos veintiuna (1.2721) cuerdas; colinda por el NORTE, con Urbanización Chalet de Santa Clara; por el SUR, con terrenos del Departamento de Recreación y Deportes; por el ESTE, con terrenos de la Urbanización Santa Clara; y por el OESTE, con el solar número Cuatro ( 4), número Ocho (8) y número Cinco (5) del plano de parcelación."

> La Propiedad consta inscrita en el Registro al folio ciento diez (110) del tomo ciento sesenta y nueve (169), finca once mil novecientos noventa (11,990), surgiendo la descripción de la Propiedad como su remanente después de efectuarse las segregaciones descritas en la Sentencia y la Orden fechadas dieciocho (18) de marzo de dos mil cuatro (2004) y el Mandamiento fechado treinta y uno (31) de marzo de dos mil cuatro (2004 ), emitidos por el Tribunal de Primera Instancia, Sala de Bayamón, en el Caso Civil Número DAC2003 2937 sobre Partición de Comunidad, presentados y pendientes de inscripción al asiento setecientos cuarenta y uno (741) del diario de operaciones quinientos diecisiete (517).

> Los Deudores adquirieron título de la Propiedad en virtud de la escritura número Quinientos Noventa y Seis (596) otorgada en San Juan, Puerto Rico en esta misma fecha ante la notario público Dianne M. Pérez Sebastián, copia certificada de la cual será presentada en el Registro junto, pero con anterioridad a la copia certificada de esta escritura.[4]

Por todo lo cual, Bautista solicitó por el préstamo #4321170 21701, (i) la suma de $330,054.49 en concepto del principal; (ii) la suma de $222,649.24 por razón de intereses acumulados, más los intereses que se acumulen a partir del 29 de febrero de 2024, hasta el saldo total de la deuda a razón de $68.76 diarios; (iii) la suma de

---

[4] Véase, SUMAC TPI, Entrada Núm. 1, págs. 9-10.

$13,619.40 por concepto de cargos por mora al 29 de febrero de 2024; (iv) la suma de $37,500.00 en concepto de honorarios de abogado pactados, y (v) la suma acordada de $3,571.25 por los gastos de valorización.

En cuanto al préstamo #4321221 22211, peticionó: (i) la suma de $66,010.22 en concepto del principal; (ii) la suma de $44,529.26 por razón de intereses acumulados, más los intereses que se acumulen a partir del 29 de febrero de 2024, hasta el saldo total de la deuda a razón de $13.75 diarios; (iii) la suma de $2,488.09 por concepto de cargos por mora al 29 de febrero de 2024; (v) y una suma en concepto de costas, gastos y honorarios de abogado.

Consecuentemente, el 31 de octubre de 2024, la señora Mariana Isabel Bou Córdova, la señora María Mercedes Bou Córdova; el señor Antonio Félix Bou Córdova y su esposa, la señora Wendolyn Bosques Cruz y la sociedad legal de gananciales compuesta por ambos; y el señor Sancho Javier Bou Córdova, la señora Olinka Ximena Valderrama y la sociedad legal de gananciales compuesta por ambos, presentaron *Contestación a la Demanda.*[5] En esta, aceptaron la existencia de los pagarés, sin embargo, negaron que Bautista fuera el actual tenedor del instrumento por falta de información.

Con posterioridad, el 13 de noviembre de 2024, el señor Raphael Gerardo Peña Ramón, la señora Patricia Mellie Culpeper Arbona y la sociedad legal de gananciales compuesta por ambos presentaron *Contestación a la Demanda.*[6] En las defensas afirmativas expuestas, arguyeron la existencia de una doble inscripción. Indicaron que, el terreno objeto de este pleito, fue inscrito ante el Registro de la Propiedad a nombre de otra persona.

---

[5] Véase, SUMAC TPI, Entrada Núm. 67.
[6] Véase, SUMAC TPI, Entrada Núm. 71.

Finalmente, el 15 de enero de 2025, la señora María Paola Culpeper Bou, el señor Paul H. Culpeper Bou y la señora María Mercedes Bou Córdova, y Paul H. Culpeper Arbona, en representación del menor Martín Eduardo Culpeper Bou, en calidad de coherederos del señor Paul H. Culpeper Arbona, presentaron *Contestación a la Demanda Enmendada*.[7] En este documento se limitaron a negar las alegaciones presentadas por Bautista.

Luego de varias incidencias procesales, el 29 de abril de 2025, Bautista presentó *Solicitud de Sentencia Sumaria* en la cual indicó que no existen hechos en controversia que impidan la disposición del pleito mediante la vía sumaria.[8] En su escrito, reiteró que las partes suscribieron dos (2) Pagarés que entregaron en prenda a su favor. Además, alegó que, las partes hipotecaron la propiedad descrita anteriormente para garantizar el pago de las deudas. Insistió en que las sumas adeudadas advinieron líquidas, vencidas y exigibles.

Posteriormente, el 13 de mayo de 2025, el foro primario celebró conferencia inicial. Durante dicho procedimiento, los codemandados, aquí Apelantes, la señora Mariana Isabel Bou Córdova, la señora María Mercedes Bou Córdova, el señor Antonio Félix Bou Córdova y su esposa, la señora Wendolyn Bosques Cruz, el señor Sancho Javier Bou Córdova y su esposa, la señora Olinka X. Valderrama Verano, por conducto de su representación legal, alegaron lo siguiente, a modo de defensa afirmativa, según surge de la *Minuta* notificada en igual fecha:

> El licenciado Viviani Meléndez manifestó que en cuanto al descubrimiento de prueba, en el informe había sometido unas fechas que al día de hoy no se han cumplido, por lo que solicita el término de 10 días para enviar un descubrimiento de prueba a la parte demandante. **A su vez, indicó que su controversia principal fue que leyendo de la certificación entendía que había una anotación de demanda en esta misma finca e inclusive vio una sentencia de ese caso**

---

[7] Véase, SUMAC TPI, Entrada Núm. 81.
[8] Véase, SUMAC TPI, Entrada Núm. 114.

**donde le adjudican esa finca a otra persona. Por lo que se estaba levantando una defensa de una falta de parte indispensable por lo menos de la aseguradora de título que puede existir en el caso presente y que a eso va dirigido el descubrimiento de prueba que va a ser bien limitado y para lo que solicitó nuevamente el término de 10 días.**[9] (Énfasis nuestro).

Tras escuchar su argumentación, el foro *a quo* informó que se encontraba sometida ante su consideración la solicitud de sentencia sumaria. Adelantó que, procedería a resolver dicha moción cuando se presente la oposición, o una vez concluya el descubrimiento de prueba.

Así las cosas, el 3 de julio de 2025, la señora Mariana Isabel Bou Córdova; la señora María Mercedes Bou Córdova; el señor Antonio Félix Bou Córdova, y su esposa, la señora Wendolyn Bosques Cruz, y la sociedad legal de bienes gananciales compuesta por ambos; el señor Sancho Javier Bou Córdova, y su cónyuge, la señora Olinka Ximena Valderrama y la sociedad legal de bienes gananciales compuesta por ambos; y la señora María Paola Culpeper Bou; el señor Paul H. Culpeper Bou y la señora María Mercedes Bou Córdova, en representación del menor Martín Eduardo Culpeper, y como coherederos del señor Paul H. Culpeper Arbona, presentaron *Oposición a Solicitud de Sentencia Sumaria*.[10] Mediante el referido escrito, señalaron que existe una controversia en cuanto a la titularidad del inmueble, en virtud de la *Sentencia* emitida por el foro primario el 22 de junio de 2021, en el caso *Ramon Luis Valcárcel Caraballo y otros v. Javier Orlando Valcárcel Nogueras*, Civil Núm. GB2020CV00350. Agregaron que, la propiedad se encuentra asegurada por Stewart Title, por lo que, su contrato de seguro les protege contra el riesgo de que exista un defecto en la titularidad del

---

[9] Véase, SUMAC TPI, Entrada Núm. 117, pág. 2.
[10] Véase, SUMAC TPI, Entrada Núm. 124**. Consta en el expediente que su escrito de oposición se acompañó con la *Sentencia* antes mencionada, la *Certificación de Título* de la finca objeto de esta controversia y la documentación sobre la aseguradora de título Stewart Title.**

bien. A esos fines, reiteraron que existe un problema de falta de parte indispensable.

Conforme a lo ordenado, el 7 de octubre de 2025, Bautista presentó *Réplica a "Oposición a la Solicitud de Sentencia Sumaria"* en la que arguyó que no se puede alegar falta de parte indispensable en vista de que la *Demanda* se presentó contra los mismos titulares que figuran inscritos en el Registro de la Propiedad.[11] Por otro lado, esbozó que la función de una aseguradora de títulos es garantizar que la propiedad tenga un título limpio y libre de gravámenes ocultos. Razonó que su inclusión en el pleito resulta innecesaria, toda vez que la *Demanda* se dirigió en contra de los titulares actuales. Finalmente, indicó que las partes involucradas en el pleito GB2020CV00350 tampoco se consideran parte indispensable en vista de que no constan inscritas ante el Registro de la Propiedad como titulares de la finca.

En desacuerdo, el 8 de octubre de 2025, la señora Mariana Isabel Bou Córdova; la señora María Mercedes Bou Córdova; el señor Antonio Félix Bou Córdova, y su esposa, la señora Wendolyn Bosques Cruz, y la sociedad legal de bienes gananciales compuesta por ambos; el señor Sancho Javier Bou Córdova, y su cónyuge, la señora Olinka Ximena Valderrama y la sociedad legal de bienes gananciales compuesta por ambos; y la señora María Paola Culpeper Bou; el señor Paul H. Culpeper Bou y la señora María Mercedes Bou Córdova, en representación del menor Martín Eduardo Culpeper Bou, como herederos del señor Paul H. Culpeper Arbona, presentaron *Breve Dúplica a Réplica a Oposición a la Solicitud de Sentencia Sumaria.*[12] Mediante el referido escrito, informaron que en el pleito sobre sentencia declaratoria, se solicitó reconocer a los

---

[11] Véase, SUMAC TPI, Entrada Núm. 132.
[12] Véase, SUMAC TPI, Entrada Núm. 134.

integrantes de la Sucesión Cayetano Valcárcel y Manuela Caraballo como titulares de la Finca Núm. 1,452, no de la Finca Núm. 11,869. Por tanto, arguyeron que existe un defecto en el título del inmueble por haberlos nombrados como titulares de la finca en controversia. En vista de ello, reiteraron que la póliza de seguros de título venía obligada a resolver el asunto en el Registro de la Propiedad o saldar la deuda pendiente.

Al día siguiente, Bautista presentó *Moción Suplementando Réplica a Oposición a la Solicitud de Sentencia Sumaria*, a la cual adjuntó la *Certificación Registral* emitida el 7 de octubre de 2025. En esencia, insistió en que no existe un derecho inscrito a favor de la Sucesión Cayetano Valcárcel o Manuela Caraballo.[13] Apuntó que, la compraventa que traspasa la titularidad del bien a los Apelantes se encuentra inscrita en el Asiento Núm. 11. Por tal motivo, arguyó que la misma no cumple con los requisitos esbozados en la Ley Núm. 210-2015, según enmendada, conocida como la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, 30 LPRA sec. 6001 *et seq.* ("Ley del Registro de la Propiedad"), en torno al tracto en los derechos hereditarios.

Consecuentemente, el 17 de octubre de 2025, la señora Mariana Isabel Bou Córdova; la señora María Mercedes Bou Córdova; el señor Antonio Félix Bou Córdova y su esposa, la señora Wendolyn Bosques Cruz, y la sociedad legal de bienes gananciales compuesta por ambos; el señor Sancho Javier Bou Córdova, y su cónyuge, la señora Olinka Ximena Valderrama y la sociedad legal de bienes gananciales compuesta por ambos; y la señora María Paola Culpeper Bou; el señor Paul H. Culpeper Bou y la señora María Mercedes Bou Córdova, en representación del menor Martín Eduardo Culpeper Bou, en calidad de coherederos del señor Paul H.

---

[13] Véase, SUMAC TPI, Entrada Núm. 135.

Culpeper Arbona, presentaron *Breve Réplica a Moción Suplementando Réplica a Oposición a la Solicitud de Sentencia Sumaria.*[14] Nuevamente, señalaron que existe una sentencia final y firme, en la cual expresamente se reconoce a la Sucesión Cayetano Valcárcel y Manuela Caraballo como titulares de la finca en controversia. Por consiguiente, argumentaron que el tribunal *a quo* está impedido a resolver por la vía sumaria, pues adujeron que la prueba documental presentada en la oposición contradice los hechos propuestos como incontrovertidos.

Evaluadas las mociones de las partes, el 4 de noviembre de 2025, el foro primario emitió *Resolución Interlocutoria* mediante la cual declaró *No Ha Lugar* a la *Solicitud de Sentencia Sumaria* presentada por Bautista.[15] En esencia, determinó que está impedido a dictar sentencia sumaria, a la luz del siguiente razonamiento:

> A pesar de que no existe controversia sobre la mayoría de los hechos esenciales, incluyendo la existencia de la deuda, lo cierto es que estamos impedidos de dictar sentencia sumaria de ejecución de hipoteca porque no se ha aclarado de forma fehaciente el por qué existía una anotación de demanda del caso GB2020CV00350 en la finca objeto de este caso y una sentencia que establece dicha finca (aunque con mensura distinta) corresponde al caudal de una sucesión cuyos miembros no son los demandados. Tampoco se ha explicado por qué dicha anotación de demanda surge de la certificación registral unida a la demanda original y no en la emitida recientemente. Esta controversia sobre la finca es un hecho esencial que, como cuestión de derecho, imposibilita dictar sentencia sumaria sobre ejecución de hipoteca de dicha finca. En lo que concierne a la póliza del título, nos parece prematuro establecer si debe activarse la póliza o no, porque no ha quedado claro si existe un problema con el título.[16]

Inconforme, el 18 de noviembre de 2025, Bautista presentó *Moción de Reconsideración*, en la cual aclaró los hechos del caso GB2020CV00350.[17] Explicó que, en ese caso, hubo un error en la división y adjudicación al mencionar como finca matriz la Finca Núm. 11,869 y no la Finca Núm. 1,452. Sostuvo que, en la *Sentencia*

---

[14] Véase, SUMAC TPI, Entrada Núm. 137.
[15] Véase, SUMAC TPI, Entrada Núm. 139.
[16] Véase, SUMAC TPI, Entrada Núm. 139, pág. 11.
[17] Véase, SUMAC TPI, Entrada Núm. 140.

se dividió y adjudicó correctamente la propiedad entre los herederos. Indicó que, con posterioridad, la sucesión Cayetano Valcárcel y Manuela Caraballo vendió la finca a los Apelantes conforme surge de la inscripción Núm. 11 del Folio de Karibe sobre la Finca Núm. 1,452. Además, aseveró que las hipotecas sobre las cuales se solicita la ejecución se encuentran debidamente inscritas en los asientos Núm. 12 y Núm. 13. Detalló, también, que la Anotación de Demanda fue cancelada por prescripción, en vista de que transcurrieron los (4) años desde que esta se realizó. Finalmente, reiteró que no existen otros titulares o defecto de títulos que impidan la disposición del caso mediante el mecanismo de sentencia sumaria.

En respuesta, el 12 de diciembre de 2025, la señora Mariana Isabel Bou Córdova; la señora María Mercedes Bou Córdova; el señor Antonio Félix Bou Córdova, y su esposa, la señora Wendolyn Bosques Cruz y la sociedad legal de bienes gananciales compuesta por ambos; el señor Sancho Javier Bou Córdova, y su cónyuge la señora Olinka Ximena Valderrama y la sociedad legal de bienes gananciales compuesta por ambos; y la señora María Paola Culpeper Bou; el señor Paul H. Culpeper Bou y la señora María Mercedes Bou Córdova, en representación del menor Martín Eduardo Culpeper, como coherederos del señor Paul H. Culpeper Arbona, presentaron *Réplica a Reconsideración, Solicitud de Vista y/o Vista Ocular*.[18] En esta, explicaron que en el terreno en controversia existen 3,020.9772 metros cuadrados que constan inscritos a nombre de la señora Iraida J. Rivera Otero ("señora Rivera Otero"). A su vez, indicaron que el número de catastro del Centro de Recaudación de Ingresos Municipales ("CRIM") refleja que la señora Rivera Otero es la titular del terreno. Ante ello, adujeron que existe un problema de falta de parte indispensable. Insistieron en que hubo un error en los

---

[18] Véase, SUMAC TPI, Entrada Núm. 144.

planos de inscripción, por lo cual, solicitaron la celebración de una vista ocular para aclarar la validez de su argumento.[19]

Por su parte, el 16 de diciembre de 2025, Bautista presentó *Oposición a "Moción Réplica a Reconsideración, Solicitud de Vista y/o Vista Ocular".*[20] En esta, arguyó que los hechos esbozados en la *Réplica* atienden distintos argumentos sobre la titularidad que resultan inmateriales en el pleito que nos ocupa. Enfatizó que, en una reclamación sobre ejecución de hipoteca, la acción se presenta contra quienes aparecen como titulares registrales del inmueble hipotecado.

Tras examinar las referidas mociones, el 22 de diciembre de 2025, el foro *a quo* emitió *Resolución Interlocutoria* en la que declaró *Ha Lugar* la *Moción de Reconsideración* radicada por Bautista.[21] En consecuencia, en igual fecha, dictó y notificó *Sentencia Final,* mediante la cual declaró *Con Lugar* la *Solicitud de Sentencia Sumaria.*[22] En virtud de este dictamen, puntualizó que la acción hipotecaria se ejerce en contra de los titulares del bien inmueble, los cuales aparecen inscritos ante el Registro de la Propiedad. Así precisado, resolvió que en este caso opera la figura de tercero registral. Por todo lo cual, ordenó el pago total de $750,323.03, más los intereses acumulados hasta el saldo total. A tales efectos, formuló los siguientes hechos incontrovertidos:

1. BAUTISTA CAYMAN ASSET COMPANY es una compañía exenta ("exempted company") debidamente organizada y existente bajo las leyes de las Islas Caimán, con dirección física en 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Island.

2. Los codemandados Wendolyn Bosques Cruz, Antonio Félix Bou Córdova, la Sociedad Legal de Gananciales entre ellos compuesta, Sancho Javier Bou Córdova, Olinka Ximena Valderrama Verano y la Sociedad Legal de

---

[19] Al siguiente día, el señor Raphael Gerardo Peña Ramón, la señora Patricia Mellie Culpeper Arbona y la Sociedad Legal de Gananciales compuesta por ambos, presentaron un escrito intitulado Moción en que se Adopta por Referencia Réplica a Reconsideración, Solicitud de Vista y/o Vista Ocular (Entrada Núm. 144).
[20] Véase, SUMAC TPI, Entrada Núm. 146.
[21] Véase, SUMAC TPI, Entrada Núm. 147.
[22] Véase, SUMAC TPI, Entrada Núm. 148.

Gananciales entre ellos compuesta, Raphael Gerardo Peña Ramón y Patricia Mellie Culpeper Arbona, y la Sociedad Legal de Gananciales entre ellos compuesta, son deudores principales y garantizadores de los préstamos objeto de cobro del presente pleito.

3. El 25 de octubre de 2005, First Equity Mortgage Bankers Inc. concedió un préstamo comercial a Raúl José Casas Millares, Mariana Isabel Bou Córdova, Paul Horacio Culpeper Arbona, María Mercedes Bou Córdova, Raphael Gerardo Peña Ramón y Patricia Mellie Culpeper Arbona por la suma de $375,000.00. Motivo por el cual, en esa misma fecha, los deudores y First Equity suscribieron varios documentos, entre otros, un contrato de préstamo intitulado "Pagaré (Note)", para el Préstamo #4321170 21701, ante la notario público Carmen Lourdes Vega Anadón, (en adelante el "Pagaré A").

4. El 25 de octubre de 2005, First Equity y los deudores otorgaron la Escritura titulada "Balloon Rider (Conditional Right to Refinance)" (en adelante "Balloon #1) para enmendar y suplementar la Escritura de Primera Hipoteca garantizada por el Pagaré A. Mediante el Balloon #1, se estableció, ente otros, que al llegar la fecha de vencimiento del instrumento, los deudores podrían obtener un nuevo préstamo con fecha de vencimiento de 1 de noviembre de 2035.

5. Asimismo, en esa misma fecha, Raúl José Casas Millares, Mariana Isabel Bou Córdova, Paul Horacio Culpeper Arbona, Maria Mercedes Bou Córdova, Rapahel Peña Ramón y Patricia Michelle Culpeper Arbona, suscribieron un "Balloon Note Addendum (Conditional Right to Refinance)" (en adelante "Ballooon Addendum") mediante el cual se adoptó lo dispuesto en la Escritura del Balloon #1.

6. Por otro lado, el 14 de agosto de 2007, el First Equity y los deudores y los garantizadores otorgaron la Escritura #236 de Rectificación y Ratificación (en adelante "Escritura #236"), ante la notario público Carmen Lourdes Vega Anadón. Mediante la Escritura #236 se subsanó el error de omitir cláusula sobre pago global y, además, se incluyó en el Pagaré el anejo titulado "Balloon Note Addendum".

7. Bautista es el tenedor actual del Pagaré A y por tanto el actual Acreedor del Pagare A.

8. Por valor recibido, en función del Préstamo #4321170 21701 otorgado, los deudores y garantizadores adeudan a la parte Demandante las siguientes sumas, las cuales devengan intereses y otras partidas hasta su total pago a la tasa anual según se establece a continuación:

| Préstamo Original | Principal Adeudado | Intereses Acumulados (al 15 de febrero de 2025) | Cargos por mora (al 15 de febrero de 2025) | Otros Cargos Contractualmente Pactados (Gastos de Valorización) | Costas, gastos y honorarios de abogados contractualmente pactados | Total Adeudo (al 15 de febrero de 2025) |
|---|---|---|---|---|---|---|
| $375,000.00 | $330,054.49 | $246,440.00 | $14,753.94 | $3,571.25 | $37,500.00 | **$632,320.34** |

9. Los intereses del préstamo #4321170 21701 continúan acumulándose a partir del 16 de febrero de 2025, a razón de $68.76 diarios.

10. Los deudores acordaron que las cantidades desembolsadas por First Equity a éstos serían pagadas mediante 119 pagos mensuales, iguales y consecutivos

11. Para principal e intereses de $2,622.05 cada uno y un (1) último pago por el balance insoluto de principal adeudado ($328,104.05), más intereses al tipo pactado y cargos acumulados, pagadero en la fecha de vencimiento.

12. Mediante el contrato de préstamo del préstamo #4321170 21701 los Deudores acordaron que el balance insoluto del principal devengaría intereses equivalentes al 7.50% sobre la tasa preferencial ("prime rate").

13. Mediante el contrato de préstamo del préstamo #4321170 21701 los Deudores acordaron que, si efectuaba cualquier pago mensual luego de Transcurrido quince (15) días después de su vencimiento, éstos pagarían una Comisión por mora o pago tardío equivalente al 5% del pago no efectuado a tiempo.

14. El Pagaré A, establece como una de las causas de incumplimiento la falta de pago de intereses o principal.

15. El Pagaré A dispone que en caso de ocurrir una de las causas de incumplimiento la tasa de interés aumentaría 3% por encima de la tasa de interés aplicable.

16. Mediante el Contrato de Préstamo del Préstamo #4321170 21701 los deudores se comprometieron, además, a pagar toda costa, gastos y honorarios de abogados en caso de litigio.

17. La deuda del Préstamo #4321170 21701 está vencida, es líquida y exigible.

18. El 25 de octubre de 2005, el First Equity concedió a Raúl José Casas Millares, Mariana Isabel Bou Córdova, Paul Horacio Culpeper Arbona, Maria Mercedes Bou Córdova, Rapahel Peña Ramón y Patricia Michelle Culpeper Arbona el préstamo comercial solicitado por la cantidad de $75,000.00 motivo por el cual, en esa misma fecha, éstos y el Acreedor suscribieron varios documentos, entre otros, un contrato de préstamo intitulado "Pagaré (Note)", Préstamo #4321221 22211, ante la notario público Carmen Lourdes Vega Anadón, (en adelante el "Pagaré B").

19. El 25 de octubre de 2005, el Acreedor, los deudores y los garantizadores otorgaron la Escritura "Balloon Rider (Conditional Right to Refinance)" (en adelante "Balloon #2) para enmendar y suplementar la Escritura de Primera Hipoteca garantizada por el Pagaré A. Mediante el Balloon #2, se estableció, entre otros, que al llegar la fecha de vencimiento del instrumento, los deudores podrían obtener un nuevo préstamo con fecha de vencimiento de 1 de noviembre de 2035.

20. Asimismo, en esa misma fecha, los deudores suscribieron un "Balloon Note Addendum (Conditional Right to Refinance)" (en adelante "Ballooon Addendum #2") mediante el cual se adoptó lo dispuesto en la Escritura del Balloon #2.

21. Por otro lado, el 14 de agosto de 2007, el Acreedor y los deudores y los garantizadores otorgaron la Escritura #236 de Rectificación y Ratificación (en adelante "Escritura #236), ante la notario público Carmen Lourdes

Vega Anadón. Mediante la Escritura #236 se subsanó el error de omitir cláusula sobre pago global y además, se incluyó en el Pagaré el anejo titulado "Balloon Note Addendum".

22. Bautista es el tenedor actual del Pagaré B y por tanto el actual Acreedor del Pagaré B.

23. Por valor recibido, en función del Pagaré B otorgado, los deudores adeudan a la parte Demandante las siguientes sumas, las cuales devengan intereses y otras partidas hasta su total pago a la tasa anual según se establece a continuación:

| Préstamo Original | Principal Adeudado | Intereses Acumulados (al 15 de febrero de 2025) | Cargos por mora (al 15de febrero de 2025) | Total Adeudo (al 15 de febrero de 2025) |
|---|---|---|---|---|
| $75,000.00 | $66,010.22 | $49,287.45 | $2,715.02 | **$118,012.69** |

(Según se desprende del anejo ii bajo sumac 114, correspondiente a la solicitud de sentencia sumaria de la demandante)

24. Los intereses continúan acumulándose, a partir del 16 de febrero de 2025, hasta su pago total, a razón de $13.75.

25. Mediante el contrato de préstamo #4321221 22211 los deudores acordaron que las cantidades desembolsadas por first equity a los deudores serían pagadas mediante 119 pagos mensuales, iguales y consecutivos para principal e intereses de $524.41 cada uno y un (1) último pago por el balance insoluto de principal adeudado ($65,620.81), más intereses al tipo pactado y cargos acumulados, pagadero en la fecha de vencimiento.

26. Mediante el contrato de Préstamo #4321221 22211 los deudores acordaron que el balance insoluto del principal devengaría intereses equivalentes al 7.50% sobre la tasa preferencial ("Prime Rate").

27. El Pagaré B, establece como una de las causas de incumplimiento la falta de pago de intereses o principal.

28. Los deudores acordaron que, si ocurriese cualquier situación considerada como una Causa de Incumplimiento, el Acreedor tendría la potestad de terminar automáticamente el Préstamo, y las sumas de principal, intereses y cargos acumulados serían inmediatamente líquidos y exigibles, sin que se requiriese notificación alguna.

29. La parte demandada ha incumplido con los términos de la obligación antes mencionada no empece las gestiones de cobro de la parte Demandante.

30. La deuda del Préstamo #4321221 22211 que está vencida, es líquida y exigible.

31. Para garantizar el pago de las sumas adeudadas en ambos Préstamos #4321170 21701 y #4321221 22211, antes referidos, los deudores suscribieron la Escritura #597 de Primera Hipoteca a favor del acreedor, First Equity Mortgage Bankers, el día 25 de octubre de 2005, ante la notario público Dianne M. Pérez Sebastián.

32. Para garantizar el pago de las sumas adeudadas antes referidas, los deudores y First Equity suscribieron varios Pagarés, que entregaron en prenda, los cuales se describen a continuación:

Pagaré (A) por la suma de $375,000.00, a favor de First Equity Mortgage Bankers, ante la notario público Carmen Lourdes Vega Anadón, y asegurado por una Hipoteca en Garantía de Pagaré, constituida mediante la Escritura Número 597 de esa misma fecha ante el mismo notario. El referido Pagaré consta endosado a favor de Bautista.

Pagaré (B) por la suma de $75,000.00 a favor de First Equity Mortgage Bankers a favor de First Equity Mortgage Bankers, ante la notario público Carmen Lourdes Vega Anadón, y asegurado por una Hipoteca en Garantía de Pagaré, constituida mediante la Escritura Número 598 de esa misma fecha ante el mismo notario. El referido Pagaré consta endosado a favor de Bautista.

33. La Hipoteca en Garantía del Pagaré A y del Pagaré B, antes descritas, grava la siguiente propiedad, la cual está debidamente inscrita:

"RUSTICA: Parcela de terreno localizado en el Barrio Los Frailes del término municipal de Guaynabo, Puerto Rico, con una cabida superficial de cinco mil (5,000.00) metros cuadrados, equivalentes a uno punto dos mil setecientos veintiuna (1.2721) cuerdas; colinda por el NORTE, con Urbanización Chalet de Santa Clara; por el SUR, con terrenos del Departamento de Recreación y Deportes; por el ESTE, con terrenos de la Urbanización Santa Clara; y por el OESTE, con el solar número Cuatro ( 4), número Ocho (8) y número Cinco (5) del plano de parcelación."

La Propiedad consta inscrita en el Registro al folio ciento diez (110) del tomo ciento sesenta y nueve (169), finca once mil novecientos noventa (11,990), surgiendo la descripción de la Propiedad como su remanente después de efectuarse las segregaciones descritas en la Sentencia y la Orden fechadas dieciocho (18) de marzo de dos mil cuatro (2004) y el Mandamiento fechado treinta y uno (31) de marzo de dos mil cuatro (2004 ), emitidos por el Tribunal de Primera Instancia, Sala de Bayamón, en el Caso Civil Número DAC2003-29371 sobre Partición de Comunidad, presentados y pendientes de inscripción al asiento setecientos cuarenta y uno (741) del diario de operaciones quinientos diecisiete (517).

Los Deudores adquirieron título de la Propiedad en virtud de la escritura número Quinientos Noventa y Seis (596) otorgada en San Juan, Puerto Rico en esta misma fecha ante la notario público Dianne M. Pérez Sebastián, copia certificada de la cual será presentada en el Registro junto, pero con anterioridad a la copia certificada de esta escritura.

34.  Escritura #598, los deudores tasaron la Finca #1452 en $75,000.00, para que dicha cantidad sirva como el tipo mínimo en la primera subasta que en el momento se celebre.[23]

En desacuerdo, el 7 de enero de 2026, el señor Raphael Gerardo

Peña Ramón, la señora Patricia Mellie Culpeper Arbona y la

---

[23] Véase, SUMAC TPI, Entrada Núm. 148, págs. 4-11.

Sociedad Legal de Gananciales compuesta por ambos, presentaron *Moción de Reconsideración de Sentencia (Entrada Núm. 148) y Solicitud de Desestimación por Falta de Parte Indispensable.*[24] Insistieron en que el foro *a quo* debía resolver la controversia concerniente a la doble inmatriculación previo a la ejecución de la hipoteca. Además, arguyeron que el foro primario carecía de jurisdicción por falta de parte indispensable. Asimismo, argumentaron que es improcedente aplicar la figura de tercero registral sin imponer la carga al acreedor hipotecario de investigar o atender los derechos no inscritos.

Examinada su argumentación, al día siguiente, el foro primario emitió *Resolución Interlocutoria,* notificada el 9 de enero de 2026, en la que declaró *No Ha Lugar* la solicitud de reconsideración.

Inconformes, el 6 de febrero de 2026, la señora Mariana Isabel Bou Córdova; la señora María Mercedes Bou Córdova; el señor Antonio Felix Bou Córdova, y su esposa, la señora Wendolyn Bosques Cruz y la sociedad legal de bienes gananciales compuesta por ambos; el señor Sancho Javier Bou Córdova, y cónyuge la señora Olinka Ximena Valderrama y la sociedad legal de bienes gananciales compuesta por ambos; y la señora María Paola Culpeper Bou; el señor Paul H. Culpeper Bou y la señora María Mercedes Bou Córdova, en representación del menor Martín Eduardo Culpeper Bou, como herederos del señor Paul H. Culpeper Arbona, acudieron ante esta Curia mediante *Escrito de Apelación* ("TA2026AP00119"), en el cual le imputó al foro primario la comisión de los siguientes errores:

> A. ERRÓ EL TPI AL DETERMINAR, EN LA DETERMINACIÓN DE HECHO NÚM. 33, QUE LA FINCA QUE GARANTIZA LOS PRÉSTAMOS DESCRITOS EN LA SENTENCIA, OBJETO DE ESTE PLEITO, ESTÁ DEBIDAMENTE INSCRITA Y QUE SE CORRIGIÓ EL ERROR EN CUANTO A LA FINCA.
>
> B. ERRÓ EL TPI AL NO DETERMINAR QUE FALTAN PARTES INDISPENSABLES EN EL PLEITO: LA DUEÑA DE PARTE DE

---

[24] Véase, SUMAC TPI, Entrada Núm. 149.

LA FINCA DE LOS DEMANDADOS QUE ESTÁ INSCRITA BAJO OTRO NÚMERO Y LA COMPAÑÍA DE SEGURO DE TÍTULO.

Por su parte, el 9 de febrero de 2026, el Sr. León León acudió ante nos mediante *Apelación Civil* ("TA2026AP00129"), en cual señaló la comisión de los siguientes errores:

Primer Error

Erró el Tribunal de Primera Instancia al dictar sentencia sumaria aplicando la figura del tercero registral y la fe pública registral en un escenario de doble inmatriculación, en abierta contradicción con la doctrina reiterada del Tribunal Supremo que establece que ante inscripciones registrales incompatibles sobre un mismo inmueble dicha protección no es aplicable.

Segundo Error

Erró el Tribunal de Primera Instancia al no desestimar el pleito por falta de jurisdicción al adjudicar y ordenar la ejecución de un inmueble que se encuentra inscrito bajo dos números de finca distintos sin la comparecencia de la persona que figura como titular registral de una de esas inscripciones.

En vista de ello, el 6 de marzo de 2026, Bautista presentó su *Alegato de la Parte Apelada y/o Solicitud de Desestimación.* Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

## II.

### *A. Sentencia Sumaria*

En nuestro ordenamiento jurídico, la sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers,* 215 DPR___ (2025), 2025 TSPR 3, pág. 10; Véase, además, *BPPR v. Cable Media,* 215 DPR___ (2025), 2025 TSPR 1. A tales fines, la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que cualquiera de las partes de un litigio le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o

cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1 y R. 36.2.

En armonía con lo anterior, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, preceptúa los requisitos de forma y contenido respecto a esta moción y su oposición. Véase, además, *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023). En particular, el inciso (a) de la precitada regla establece las siguientes formalidades que debe contener la petición de sentencia sumaria:

(1) Una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

(4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36. 3(a).

Nótese que, en aras de demostrar la inexistencia de hechos esenciales en controversia, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. *Íd.*

Por su parte, quien se oponga a la moción de sentencia sumaria tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 677 (2018). En esa dirección, la parte opositora debe cumplir con los requisitos de la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (b), según se esbozan a continuación:

(b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:

(1) Lo indicado en las cláusulas (1), (2) y (3) del inciso (a) de esta regla;

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal, y

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

En virtud de lo anterior, la parte opositora no podrá descansar solamente en aseveraciones o en negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma específica. 32 LPRA Ap. V, R. 36.3(c). De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. *Íd.*

No obstante, es menester explicar que, la concesión de este mecanismo no opera automáticamente. Para que prospere una moción de tal naturaleza, es necesario que, de la prueba que acompaña la solicitud surja preponderantemente la inexistencia de controversia sobre los hechos medulares del caso. *CSM v. ELA*, 216 DPR___ (2025), 2025 TSPR 78, pág. 9. Así, pues, presentada la solicitud de sentencia sumaria y su respectiva oposición a tenor con las exigencias discutidas, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. *Consejo Tit. v. Rocca Dev. Corp. et als.*, 215 DPR __ (2025); 25 TSPR 6, pág. 15; *Abrams Rivera v. E.L.A.,* 178 DPR 914, 933 (2010). Sobre este particular, nuestra más Alta Curia ha definido el hecho material como "aquel que puede afectar el

resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Tit. v. Rocca Dev. Corp. et als.,* 215 DPR___ (2025), 2025 TSPR 6, pág. 15. Por ende, en estos contextos, la parte promovente de la solicitud de sentencia sumaria tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

En cuanto a los documentos que acompañan los escritos, la jurisprudencia ha establecido que "éstos deben verse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos". *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 735 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986). Finalmente, una vez el tribunal efectúe el análisis que antecede, podrá dictar sentencia sumaria "si queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que es innecesaria una vista en los méritos". *Birriel Colón v. Econo y otro,* 213 DPR 80, 91 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 337 (2021).

Por otro lado, una parte inconforme respecto a la determinación relacionada con la solicitud de sentencia sumaria tiene el derecho a recurrir a nivel apelativo. Sobre este particular, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció el estándar que el foro intermedio debe aplicar al revisar las denegatorias o la concesiones de las mociones de sentencia sumaria:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están

en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Ante una solicitud de revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que, debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra.* Así, pues, "la revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, pág. 91-92, citando a *Meléndez González et al. v. M. Cuebas, supra.*

En este proceso de revisión, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media, supra,* pág. 9 (citas omitidas). Cónsono con lo anterior, en tal ejercicio, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por último, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, dispone que si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la

totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos. De igual forma, el tribunal deberá establecer hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando así que los procedimientos ulteriores sean justos en el pleito. *Íd.* A tenor con lo anterior, la precitada regla establece que, al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. *Íd.*

### B. Doble Inmatriculación

Nuestro Máximo Foro Judicial ha definido la doble inmatriculación como "el hecho irregular de que una misma finca se encuentre inscrita en el Registro de la Propiedad en dos o más folios independiente". *Medina y otros v. Medina Garay*, 170 DPR 135, 143 (2007). Igualmente, existe una situación de doble inmatriculación cuando "una de las fincas coincide sólo parcialmente o se encuentra superpuesta con respecto de otra". *Ramos v. Moure et al.*, 150 DPR 685, 693 (2000).

Al respecto, el Artículo 200 de la Ley Núm. 210-2015, según enmendada, conocida como la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, 30 LPRA sec. 6001 *et seq.* ("Ley del Registro de la Propiedad"), dispone que:

> El titular que tenga inscrita a su favor una finca y crea que bajo número diferente existe otra finca inscrita que se refiere al mismo inmueble y al mismo titular, **podrá solicitar del Registrador que, previa citación de todos los interesados conforme lo dispuesto en las Reglas de Procedimiento Civil vigentes, resuelva cuál de las inscripciones subsistirá. El Registrador resolverá cuál de las inscripciones subsistirá y procederá con la cancelación de la que corresponda una vez encuentre probado que las fincas son idénticas.** 30 LPRA sec. 6322 *et seq.* (Énfasis nuestro).

A su vez, el precitado artículo preceptúa que "en aquellos casos en que todos los interesados no puedan ponerse de acuerdo, tendrán que acudir al Tribunal de Primera Instancia para resolver la controversia". *Íd.* Según prescribe la referida legislación, "cuando la doble inmatriculación se refiera a distintos titulares, se resolverá por juicio ordinario sobre la identidad de la finca y el mejor derecho al inmueble". *Íd.* En ambos casos el tribunal ordenará la cancelación de la inscripción correspondiente, de así proceder. *Íd.*

### C. *Falta de Parte Indispensable*

En nuestro esquema procesal, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, regula la figura de parte indispensable:

> Las personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada.

De acuerdo con interpretación jurisprudencial, la parte indispensable es aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos. *Inmobiliaria Baleares, LLC v. Benabe González,* 214 DPR 1109, 1120 (2024); *Pérez Ríos et al. v. CPE,* 213 DPR 203, 213 (2023). Así pues, "una parte se convierte en indispensable cuando la controversia no puede adjudicarse sin su presencia ya que sus derechos se verían afectados". *Rivera Marrero v. Santiago Martínez, supra,* pág. 479; *Bonilla Ramos v. Dávila Medina,* 185 DPR 667, 677 (2012).

Por su trascendencia, "la sentencia que se emita en ausencia de parte indispensable es nula". *García Colón et al. v. Sucn. González,* 178 DPR 527, 550 (2010). Si no está presente en el litigio se trasgrede el debido proceso de ley del ausente. *Rivera Marrero v. Santiago Martínez, supra,* pág. 479; *Bonilla Ramos v. Dávila Medina,*

*supra*, pág. 677. Por tanto, el planteamiento de falta de indispensable puede presentarse en cualquier momento, lo que incluye que se presente por primera vez en apelación o incluso el tribunal puede levantarlo motu *proprio. Inmobiliaria Baleares, LLC v. Benabe González, supra; Pérez Ríos et al. v. CPE, supra.* De reconocerse que una parte indispensable está ausente debe desestimarse la acción legal, sin embargo, tal proceder no tendrá el efecto de una adjudicación en los méritos, ni, por ende, de cosa juzgada. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 224 (2007); *Romero v. S.L.G. Reyes*, 164 DPR 721 (2005).

En lo referente a la controversia de autos, el Artículo 96 de la Ley del Registro de la Propiedad, *supra*, establece que:

> En todo caso de procedimiento de ejecución de hipoteca se demandará al titular inscrito.
>
> En los casos de ejecución de hipotecas que garantizan instrumentos negociables, deberá darse cumplimiento a las disposiciones de la legislación mercantil vigente relativas al cobro de tales instrumentos. 30 LPRA sec. 6133 *et seq.*

### III.

En los recursos de epígrafe, los Apelantes nos solicitan la revocación de la *Sentencia* emitida el 22 de diciembre de 2025, por el foro primario. Alegan que, en virtud del referido dictamen, el tribunal sentenciador ordenó el pago de la deuda ascendente a $750,323.03, más los intereses que continúen acumulándose hasta el saldo total de la deuda. Sin embargo, señalan que el foro a *quo* incidió: (1) al disponer del caso mediante la vía sumaria ante un escenario de doble inmatriculación y (2) al resolver la controversia, a pesar de existir un problema de falta de parte indispensable.

Por su parte, Bautista argumenta que la *Sentencia* impugnada es conforme al estado registral vigente. Por ello, aduce que los Apelantes no lograron demostrar la existencia de una controversia real de hechos materiales que impidiera la adjudicación del caso mediante sentencia sumaria. Asimismo, arguye que estos tampoco

acreditaron la alegada ausencia de parte indispensable, pues sostiene que cumplió su obligación legal al demandar a los titulares inscrito de la finca objeto de ejecución.

Previo a atender el caso en sus méritos, adelantamos que, por estar íntimamente relacionados los señalamientos de error, procederemos a discutirlos de manera conjunta. Así precisado, procedemos a resolver.

En primer lugar, nos corresponde realizar un examen de *novo*, tanto de la solicitud de sentencia sumaria y sus anejos, así como de su oposición, según establecido en el caso *Meléndez González et al. v. M. Cuebas, supra.* Efectuado dicho análisis, resolvemos que ambas partes cumplieron íntegramente con los requisitos dispuestos en la Regla 36.3 de Procedimiento Civil, *supra.* Por consiguientes, estamos en posición para adjudicar los argumentos contenidos en la moción de sentencia sumaria presentada por Bautista y su respectiva oposición sometida por los Apelantes.

A tales efectos, en segundo lugar, nos compete determinar si existen hechos materiales en controversia que imposibiliten dictar sentencia sumaria . Véase, *Roldán Flores v. M. Cuebas et al., supra.* Tras un análisis minucioso del recuso que nos ocupa, así como de la totalidad los documentos anejados a la solicitud de sentencia sumaria, determinamos que no existen hechos materiales en controversia que impidan acoger la vía sumaria para resolver este caso. Por consiguiente, acogemos las determinaciones de hechos formuladas por el foro primario en el dictamen apelado, por ser consistentes con la prueba documental presentada.

A la luz de lo anterior, nos resta atender el argumento de ausencia de parte indispensable. En esa dirección, surge del expediente ante nuestra consideración que, Bautista presentó *Demanda* de cobro de dinero y ejecución de hipoteca en contra de

los titulares registrales que constan inscritos en la Finca Núm. 1,452. Para acreditar que instó la reclamación conforme a derecho, adjuntó a su moción de sentencia sumaria la *Certificación Registral de la Finca Núm. 1,452*. El referido documento establece la siguiente información en cuanto a los titulares registrales de la finca mencionada:

> **INSCRITA a favor de la Comunidad de Bienes compuesta por: Sociedad Legal de Gananciales compuesta por Raúl José Casas Millares y Mariana Isabel Bou Córdova; Sociedad Legal de Gananciales compuesta por Raphael Gerardo Peña Ramón y Patricia Mellie Culpeper Arbona; Sociedad Legal de Gananciales compuesta por Wendolin Bosques Cruz y Antonio Félix Bou Córdova; Sociedad Legal de Gananciales compuesta por Sancho Javier Bou Córdova y Olinka Ximena Valderrama Verano; Sociedad Legal de Gananciales compuesta por Paul Horacio Culpeper Arbona y María Mercedes Bou Córdova, quienes adquirieron en proporción de 20% para cada Sociedad Legal de Bienes Gananciales, por Compraventa, por precio de $500,000.00; en virtud de la escritura número 596 otorgada en San Juan a 25 de octubre de 2005 ante la notaria Dianne M. Pérez Sebastián, según inscripción 11ma.**[25] (Énfasis nuestro).

Ante tales circunstancias, precisamos que Bautista incoó correctamente la acción legal en contra de los titulares, según aparecen inscritos en el Registro de la Propiedad, a tenor con el Artículo 96 de la Ley de Registro de la Propiedad, *supra*. Recordemos, pues que, el artículo aludido dispone que "en todo caso de procedimiento de ejecución de hipoteca se demandará al titular inscrito". 30 LPRA sec. 6133 *et seq.* Por tanto, colegimos que, contrario a lo alegado por los Apelantes, no existe un problema de falta de parte indispensable.

Por último, puntualizamos que, el señalamiento en cuanto a la doble inmatriculación levantado por los Apelantes no es objeto adjudicación en el dictamen apelado, ni en esta *Sentencia* apelativa. Por lo que, estamos impedidos a atender tal argumento. No obstante, advertimos que, el señalamiento de doble inmatriculación debe atenderse en un procedimiento independiente, de así los

---

[25] Véase, SUMAC TPI, Entrada 114, Anejo K, *Certificación Registral de la Finca 1,452*.

Apelantes considerarlo, de conformidad con el Artículo 200 de la Ley del Registro de la Propiedad, *supra.*

Por consiguiente, reiteramos que el foro primario actuó correctamente al dictar sentencia sumaria, por no existir hechos sustanciales en controversia. En virtud de lo anterior, confirmamos el dictamen impugnado, pues no reviste prejuicio, parcialidad, o error manifiesto en la interpretación o la aplicación de norma procesal y sustantiva vigente en nuestro ordenamiento jurídico.

**IV.**

Por los fundamentos que anteceden, **confirmamos** la *Sentencia* emitida el 22 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones